**WENRICK v HENDRICKSON, a minor, etc**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1255.   Decided April 27, 1934

J. D. Chamberlain, Dayton, and Arthur Eaton, Dayton, for plaintiff in error.

W. S. Rhotehamel, Dayton, and Floyd Koogler, Dayton, for defendant in error.

SHERICK, J, (5th Dist) sitting
by designation.

**OPINION**

By HORNBECK, PJ.

Considering the assignments of error separately and as briefly as compatible with a fair consideration thereof:

First, Refusal of the court to instruct the jury as requested by counsel for defendant.

This request was made after the court had completed its general charge in which contributory negligence was correctly and fully charged. The subject matter of the charge requested was not incorporated in

the special charge to be given before argument. We believe that it was a matter entirely within the discretion of the trial court whether or not he should have given the charge at the time and in the language requested.

Second, Refusal to withdraw a juror because of misconduct of plaintiff.

As we have heretofore stated, were it not for the observation of the trial court in chambers to the effect that the plaintiff did exhibit nervousness and was perturbed on the stand on cross-examination, it could not be gleaned from the record. But one recess was taken. The answers as given to the queries of the defendant are coherent, sufficient, intelligent and complete. There was no suggestion of objection to the conduct of the witness during the examination nor no exception then taken to anything that she said or anything that she did. The cross-examination consumed 16 pages of record. The examination in chief of the plaintiff covered 23 pages of the printed record. Finally the observation of the trial court to the effect that counsel for defendant must take the witness as he found her was pertinent and correct. If the witness was conducting herself in an unseemly manner and feigning nervousness or hysteria, it does not appear in the record, though it must have been evident to the jury and it is as probable that it would have affected her cause unfavorably as that it would have reacted to her advantage. Clearly there is no error exemplified on the record in the particular challenged on the motion to discharge a juror for misconduct of plaintiff during her cross-examination.

Third, Error in the refusal of the court to sustain the motion of defendant to withdraw a juror and continue the case because of inquiries to the prospective juror, Ruth Maurer.

This, in our judgment, is the one and only substantial question raised on the record. Had the inquiry been made at the inception of the questioning of the jurors, we would be inclined to resolve any doubt against the questioner, but inquiry of jurors must be taken in the light of all that appears in the record. As before stated, counsel for the plaintiff had made a definite and determined effort to learn whether or not any prospective juror came within the purview of the subject matter permitted to be elicited under the third syllabus of **Pavilonis v Valentine, 120 Oh St, 154.** For some reason Mrs. Maurer did not answer the queries which should have developed that she was the wife of an agent of the State Automobile Insurance Company which

is an insurance company writing indemnity contracts. Thereafter upon direct questioning when the fact appeared and she had further stated her husband's business association would in no way affect her qualification as a juror, the unfortunate query of counsel, to which objection is urged, was made. The court took the matter in hand and permitted no further questions or discussion in the presence of the jury, withdrew with counsel to chambers, discussed the status of counsel for defendant and upon return to the jury room discharged the juror and upon request instructed the jury to give no consideration to the query of counsel to which objection had been urged. No objection was made or exception taken at the time that the court so acted. Thereafter, upon motion to withdraw a juror and continue the cause, the objection and exception was urged.

We can not say that error affirmatively appears in the question propounded to the prospective juror or in what occurred subsequent thereto and at the time of her dismissal as a juror. We do not believe that the spirit of the pronouncement in the Pavilonis case, supra, has been offended. We are informed that there are, at least, two cases now in the Supreme Court challenging the correctness of the pronouncement of the court in the Pavilonis case. Until we have heard something more definite than there found, we would not feel justified in reversing this cause upon the state of the record as it appears.

The alleged errors in the refusal of the court to permit certain questions to be answered, which had been propounded to witnesses by counsel for defendant touching the character and disposition of Black Diamond are not set forth specifically, and we therefore do not consider them.

Coming then to the final question, namely, whether or not the verdict of the jury was manifestly against the weight of the evidence. Upon the averment of the petition as to the dangerous and vicious propensities of the horse, Black Diamond, which the plaintiff was riding and notice to defendant of these tendencies, we would be required to say that under the case of **Troop A. Riding Academy v Miller,** Ohio Bar, April 16, 1934, page 545, the plaintiff failed in proof as to both of these averments. This case is unusual in some of its legal pronouncements notably the first and second syllabus and no doubt goes further than any opinion of like character that has heretofore been released in the Supreme Court, but independent of the Troop A Academy case and upon other well-

defined principles of law which are established, the proof fails in material essentials touching dangerous tendencies of the horse or notice of the same to defendant.

However, the petition had the further averment that the equipment was not properly placed upon the horse and in this respect, we are of opinion that the record will support the verdict of the jury. It is testified by the defendant that he examined all of the horses and the cinches by which the saddles were fastened and that they were all in first rate condition and properly tightened. The son of defendant also says that he inspected the cinch on Black Diamond after he was brought out of the stable and a nephew of defendant says he examined the belly band after the horse had gone into the stable after the accident. This inspection of Black Diamond is denied by the plaintiff. The plaintiff expressly testified that the saddle did turn with her and that she fell off and under the horse. In this she has some corroboration by physical facts. It is not probable that she could have received the injuries to the front and the back of her body by falling from the horse in the open field.

Dr. C. C. Christman, plaintiff's attending physician, whom she did not see until about 10 o'clock on the night of the day when she was injured said:

"I examined her completely from head to foot. I found she had rather severe injury to her right side, very painful lower end of her spine and considerable bruises on the right side under the breast and quite a marked bruise on the right thigh on the outside. Really it was very plainly the mark of a horse shoe."

It is possible but not probable that a mark of a horse's shoe would have appeared had the plaintiff not been under the horse and it is also probable that if she went under the horse that she turned with the saddle. It is true that the young man, a nephew of the defendant, who was in his employ, saw the horse, Black Diamond, running toward and into the stable and he says he followed the horse and that the saddle was in proper place and that he removed it and placed the horse in a stall. The son of defendant and both of his nephews say the plaintiff and Miss Sommers were purposely racing their horses, one testifying that one of the horses was being urged to run. This testimony directly contradictory of plaintiff's and Miss Sommers' version of what happened, raised a

clear issue of credibility, which the jury had the right to resolve in favor of the plaintiff. Without further extended discussion, we are of opinion that the verdict of the jury may properly be founded upon the evidence to the effect that the saddle turned with the plaintiff and caused her to fall and that if the cinch attaching it to the horse had been properly tightened, the saddle would not have turned under the circumstances incident to the fall of the plaintiff and that the failure of the defendant himself or his agents to properly fasten the saddle was negligence which proximately caused the injury of which plaintiff complains.

Finding no error in this record prejudicial to the plaintiff in any of the particulars asserted, the judgment must be affirmed.

BARNES and SHERICK, JJ, concur.