W. G. DURRELL v. LACY JOHNSON.

[FILED MAY 6, 1891.]

1. **Contributory Negligence:** BURDEN OF PROOF. In an action for injury, caused by the alleged negligence of the defendant, where the testimony of the plaintiff is of such a character as to justify the jury in finding that his own negligence contributed to the injury, it is erroneous to instruct the jury that the burden of proof of such contributory negligence is on the defendant.

2. ——: ——. The rule stated in *Lincoln v. Walker*, 18 Neb., 244, that where the plaintiff has proved his case without disclosing any negligence on his part, the burden of proving contributory negligence is on the defendant, does not apply where the plaintiff's own testimony tends to show contributory negligence on his part.

3. **Vicious Animals:** INSTRUCTIONS as to a vicious and dangerous animal stated too broadly to be applicable to the testimony.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*G. M. Lambertson,* for plaintiff in error, cited, as to the first instruction discussed in the opinion : *Phil. R. Co. v.*

*Boyer,* 97 Pa. St., 94 ; *Baker v. Fehr,* Id., 70; *City of Lincoln v. Walker,* 18 Neb., 244–50 ; *Tolman v. Syracuse,* 98 N. Y., 198. As to the second instruction discussed : Wharton, Neg., sec. 918; Cooley, Torts, 342, 344, 346, 349; *Rex v. Huggins,* 2 Ld. Raym. [Eng.], 1583 ; *Besozzi v. Harris,* 1 F. & F. [Eng.], 92; *Van Leuven v. Lyki,* 1 N. Y., 515; *Laverone v. Mangianti,* 41 Cal., 138; *Williams v. Moray,* 74 Ind., 25 ; *Keightlinger v. Egan,* 65 Ill., 235; *Carpenter v. Latta,* 29 Kan., 591; *Scott v. Grover,* 56 Vt., 499 ; *Glidden v. Moore,* 14 Neb., 84.

*Lamb, Ricketts & Wilson, contra:*

Negligence is not a necessary element in an action to recover damages for an injury by a vicious animal. (*Popplewell v. Pierce,* 10 Cush. [Mass.], 509 ; *May v. Burdett,* 9 Ad. & El. [Eng.], 101; *Brooks v. Taylor,* 31 N. W. Rep., 837 ; 1 Chitty Pl. [16th Am. Ed.], 93; 2 Chitty Pl., 561–63; *Stump v. Kelly,* 22 Ill., 140 ; *Woolf v. Chalker,* 31 Conn., 121 ; *Jackson v. Smithson,* 15 M. & W. [Eng.], 563 ; *Hudson v. Roberts,* 6 Exch. [Eng.], 695; *Muller v. McKesson,* 73 N. Y., 195; *Lynch v. McNally,* Id., 347; *Marble v. Ross,* 124 Mass., 47; *McCaskill v. Elliott,* 5 Strob. [S. C.], 196; *Wheeler v. Brant,* 23 Barb. [N. Y.], 324; *Marsh v. Jones,* 21 Vt., 378 ; *Mann v. Weiand,* 81* Pa. St., 243 ; *Twigg v. Ryland,* 62 Md., 380.) It is not necessary to prove long standing vicious habits; a single instance of such conduct will be sufficient. (*Mann v. Weiand,* 81* Pa. St., 243 ; *Coggswell v. Baldwin,* 15 Vt., 404 ; *Cockerham v. Nixon,* 11 Ired. [S. C.], 269; *Buckley v. Leonard,* 4 Denio [N. Y.], 500 ; *Arnold v. Norton,* 25 Conn., 95 ; *Woolf v. Chalker,* 31 Conn., 128 ; *Kittredge v. Elliott,* 16 N. H., 77; *Jenkins v. Turner,* 1 Ld. Raym. [Eng.], 109 ; *Jones v. Perry,* 2 Esp. [Eng.], 482 ; *Smith v. Pelah,* 2 Stra. [Eng.], 1264; *Sarch v. Blackburn,* 4 Car. & P. [Eng.], 297 ; *Blackman v. Simmons,* 3 Id., 138 ; *Reynolds v. Hussey,* 5 Atl. Rep. [N. H.], 458, and cases cited.

PER CURIAM.

This action was brought by the defendant in error against the plaintiff in error, to recover damages sustained by a kick from a horse of the defendant in error.

The defendant in error, in his petition in the court below, alleges "that the defendant was, on or about the 21st day of June, 1888, the owner of a certain bay Clydesdale stallion, and that the said defendant was then standing the said stallion for mares at the village of Cheney, in said county; and the plaintiff further says that the said defendant, for the purpose of inducing this plaintiff to patronize the said stallion, and to breed his mares to the said stallion, represented to this plaintiff that the said stallion was of good disposition and kind, docile, and was not vicious, and that he had no bad habits whatever. And the plaintiff further says, that, relying upon the said representations of the said defendant, this plaintiff agreed to and did breed to the said stallion, six mares; that said representations above set forth were false and untrue, and that the said· bay Clydesdale stallion above mentioned was not kind, docile, and of a good disposition, but on the contrary was vicious, unmanageable, and addicted to the vicious habit of biting and kicking, which the defendant well knew, and that the said defendant, well knowing the character and disposition of the said stallion, did, on the 21st day of June, 1888, negligently, carelessly, and unsafely have and keep the same in a small barn, and in open stalls, so that the said stallion could come in contact with another stallion owned and kept by the said defendant in the same barn ; that the said defendant carelessly and negligently neglected to provide box stalls for his said stallions so as to keep them separate from each other; that on the 21st day of June, 1888, relying upon the said representations as to the character and habits of the said Clydesdale stallion, went to the premises in the village where the defendant kept his said stallions, for the

purpose of breeding one of the plaintiff's mares to the defendant's said bay Clydesdale stallion, and that the defendant then and there negligently and carelessly permitted the other of his said stallions, to-wit, a gray Norman stallion, to be and remain in the said small barn in an open stall, and insecurely protected from the said Clydesdale stallion while the latter stallion was serving plaintiff's mare; that the defendant so negligently and carelessly handled the said Clydesdale stallion as to permit him to come in contact with and fight the said Norman stallion, and so negligently and carelessly managed and held the said Clydesdale stallion as to permit him to force this plaintiff into a corner of the said barn, and negligently and carelessly permitted the said stallion to kick this plaintiff on his left leg between the ankle and knee joints, and thereby break the same; that all of the matters hereinbefore alleged occurred without any negligence or carelessness on his part, and entirely through the negligence and carelessness of the defendant.

" That by reason of the facts above set forth he has been compelled to expend a large sum of money, to-wit, $300, for medical and surgical attendance and nursing, and that he has suffered great bodily pain and has been disabled and rendered unfit to do any work since the said 21st day of June, 1888, and has suffered and still suffers great pain, and that the plaintiff's said leg is permanently injured, and that he has by reason of the premises been damaged in the sum of $5,000.

" Wherefore the plaintiff prays damages against the defendant for the sum of $5,300, and costs of suit."

The answer of the defendant below is a general denial, and that the injury was caused by the negligence of the plaintiff below.

On the trial of the cause the jury returned a verdict in favor of the plaintiff below for the sum of $500, upon which judgment was rendered.

The plaintiff below was called as a witness in his own behalf and testified in regard to the cause of the injury as follows :

A. I was holding the mare at the time, and the —— backed at the mare. He came and "jagged" hold of me and said "stand off the mare, you damned fool." I left off the mare, and the mare shied.

Q. Who took hold of you?

A. Pete Johnson.

Q. Where was the horse at this time?

A. On the mare.

Q. What did he say?

A. He took hold of the collar and he said, " Let me take hold, you damned fool; you don't know what you are doing.". I did not say a word and let go, and when I got off by the bay horse, whether the horse kicked me I don't know. I heard an awful squeal, and I looked around and I saw the bay horse kicking the gray horse. Pete pulled at him pretty hard and pulled him away—the gray horse— to the middle of the stall. He pulled him away, and I could not move at all. I was there by the side of the mare. He said, "get up, there"; he said, "I will manage them." I never said another word. He had hold of the leading strap, and a whip in his left hand, and he went to the northeast corner and cut the bay with the whip, I thought pretty hard. He whipped the horse right in the stall where I was. I don't say he done it purposely the first time he kicked.

Q. What horse kicked?

A. The bay horse

Q. The one that served the mare?

A. Yes, sir; I sung out, let me get away or he will kill me. I got prepared in part. I saw him coming and I hauled myself on the manger. He came and catched this leg just as I got on the manger—got on top of the manger. That is the last I saw of anything till they came and lifted me out of the stall—the manger.

Q. When the horse was kicking where was your mare—right in the stall?

A. Right in the stall; I say I cannot say whether he was kicking me or the mare.

Q. Where was the mare?

A. Back to the manger.

Q. Her head to you?

A. Her head was to me, and his horse was a large horse. The court instructed the jury as follows:

"The burden of proof in this action is upon the plaintiff to establish by competent evidence every material allegation of his petition. And the defendant in his answer having alleged contributory negligence on the part of the plaintiff, the burden of proof is upon the defendant to establish this allegation by a preponderance of the evidence."

In *Lincoln v. Walker*, 18 Neb., 244, this court held that "in an action for negligence, where the plaintiff can prove his case without disclosing any negligence on his part, contributory negligence is a matter of defense, the burden of proving it being on the defendant." That decision was rendered after a very careful examination of the authorities for and against the proposition, and the conclusion reached, in our view, is right and will be adhered to. The doctrine of that case, however, can have no application where the plaintiff, in his testimony, has stated facts from which the jury could find that his own negligence had contributed to the injury. This element is entirely ignored in the instruction given. The court, therefore, should have added to the instruction the qualification "unless you find from the plaintiff's own testimony that he was guilty of contributory negligence." This would have adapted the instruction to the evidence.

The court also instructed the jury: "This case presents two phases for your determination. First, whether or not the stallion 'Welcome' at the time of the accident was a vicious, dangerous animal. If you find from the evidence

that at the time of accident the stallion was a vicious, dangerous animal and the defendant or his keeper knew such fact, then the defendant would be liable for any accident or injury done by such animal, without negligence or carelessness on the part of the plaintiff, and this would be so, even though the defendant or his agent was not guilty or carelessness or negligence. On the other hand, if you find from the evidence that the stallion ' Welcome' at the time of the accident was not a vicious or dangerous stallion beyond stallions in general, then to entitle the plaintiff to recover in this action it must appear from the evidence that the injury resulted from the carelessness and negligence or the defendant or his agent, and without contributing carelessness or negligence on the part of the plaintiff."

In this instruction too much weight is given to the statement or the testimony that the stallion was a vicious, dangerous animal, and, therefore, that the defendant would be liable for any accident or injury done by such animal. The proof tends to show that the animal was in the habit of kicking his stall and perhaps in one or two cases kicking at other horses passing behind him. The proof fails to show that the horse had kicked any human being before the infliction of the injury on the plaintiff below ; and even that may have been an accident.

In *Van Leuven v. Lyke,* 1 N. Y., 515, it is said: " It is a well settled principle that in all cases where an action is brought for mischief done to the person or personal property of another by animals *mansuetæ naturæ,* such as horses, oxen, cows, sheep, swine, and the like, the owner must be shown to have had notice of their viciousness before he can be charged, because such animals are not by nature fierce or dangerous, and such notice must be alleged in the declaration; but as to animals *feræ naturæ,* such as lions, tigers, and the like, the person who keeps them is liable for any damage they may do, *without notice;* on the ground that by nature such animals are *fierce and danger-*

*ous.*  *  *  *  But this rule does not apply where the mischief is done by such animals while committing a trespass upon the close of another." (1 Thompson on Negligence, pp. 189, 190.)

Judge Cooley states the rule as follows: " The keeper of a domestic animal is not in general responsible for any mischief that may be done by such animal which was of a kind not to be expected from him, and which it would not be negligence in the keeper to fail to guard against." (*Vrooman v. Lawyer*, 13 Johns., 339; *Van Leuven v. Lyke*, 1 N. Y., 515; *Smith v. Causey*, 22 Ala., 568; *Wormley v. Gregg*, 65 Ill., 251; *Dearth v. Baker*, 22 Wis., 73; *Jackson v. Smithson* 15 M. & W., 563; *Hudson v. Roberts*, 6 Exch., 697; *Cox v. Burbridge*, 13 C. B. [N. S.], 430; *Glidden v. Moore*, 14 Neb., 84.)

The cases cited, in our view, state the law correctly.

As there must be a new trial we will not discuss the facts. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.