FILLMORE M. WOLFINGER, APPELLEE, v. FRED SHAW: IOWA-NEBRASKA LIGHT & POWER COMPANY, APPELLANT.

292 N.W. 731

FILED JUNE 14, 1940. No. 30900.

*Crossman & Barton* and *Lee & Sheldahl,* for appellant.

*Walker & McArthur* and *George I. Craven, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

In the district court plaintiff secured a judgment for injuries alleged to have resulted from contact with an energized electric line of the defendant. Defendant filed a motion for a new trial. Pending that motion, defendant filed a motion for judgment notwithstanding the verdict. The trial court sustained the latter motion. On appeal, this court (*Wolfinger v. Shaw,* 136 Neb. 604, 287 N. W. 63) reversed the trial court's order and remanded the case. The trial court overruled the defendant's motion for a new trial. The cause is now here for review on defendant's assignments of error.

Originally the Iowa-Nebraska Light & Power Company, a corporation, and Fred Shaw, its agent, were the defendants. At the close of plaintiff's case in chief, the trial court dismissed the action as to Fred Shaw and the case proceeded against the power company.

There was a conflict in the evidence as to practically all allegations in issue. The jury having found for the plaintiff, unless otherwise stated, we recite the testimony as offered by the plaintiff.

The defendant operates a power line serving farm customers in Seward county. The line involved consisted of two lines of naked number 6 wire, about one-eighth of an inch in diameter, strung on cross-arms, 4 feet long, placed at the top of wooden poles. It was stipulated that the line was a "primary electric light line and energized" on the morning of the accident. Defendant's witnesses testified that the line carried an alternating current with a voltage "nominally referred to as 2,300 volts single phase." At that point where the accident occurred, the line ran east and west along the south side of a graded dirt highway near Pleasant Dale. The surface of the road, prepared for travel, was 16 to 18 feet in width.

On the evening of May 5 or early morning of May 6, 1936, there was a storm consisting of a light rain and wind. A pole on the line in question had rotted at the base, and some time during the night fell so that it laid across at least two-thirds of the traveled portion of the road. The wires were not broken. The pole rested on the cross-arm in the road, and on its base at the point where it was broken off. The pole was visible for a considerable distance from the east. To the west of the pole about 20 or 25 yards, the highway went over the crest of a hill.

The defendant's agent Shaw was notified about 7:45 a. m. that the pole was down and across the highway. He was again notified about 9 a. m. Although there were two points near Pleasant Dale where the current on this line could be cut off, that was not done.

The plaintiff, a man 63 years old at the time, was an employee of a dairy farm situated on the north side of the highway. The broken pole was several hundred yards west of the house. Electricity was used at the dairy farm and by the plaintiff in performing his work about the dairy barn. The plaintiff knew at breakfast time that the pole was down and that Shaw had been notified. Shortly after 10 a. m., the plaintiff left the farm buildings and went west along the highway to cut brush. He saw the pole lying in the road some 300 to 400 yards ahead. At that time, he decided to do nothing about it. Plaintiff knew that other employees would be passing that point with farm machinery during the day, and that the public generally used the highway.

When the plaintiff reached the pole, he suddenly decided to shove it out of the roadway. He approached the pole from the north side, reached for the cross-arm at a point near the pole and about a foot and a half from the top wire. The next he remembers he was south of the wires lying on the ground, his left hand clasping the lower wire. His left elbow was on the ground, and "flame" was about his hand and passing from his elbow to the ground. He tried to disengage his left hand by using his right hand,

again became unconscious, and then came to, free from the wires. There were no blisters or breaking of the skin on his hands, elbow, or other parts of his body although his left hand was brown or black. After the accident, plaintiff walked out into the field where another man was working, who testified that he was dragging one foot, "staggering an awful lot," and that he "kinda hung down on one side." Before the accident, he was a strong, able-bodied man. Following the accident, he was able to be about, but not able to do his work satisfactorily or fully use his left arm. Five days after the accident, he was interviewed by an employee of the defendant and urged to see a doctor. On May 12 he did so. Following that, he was treated by doctors of his own choosing and was examined a number of times by doctors for the defendant, the last examination being made at the time of the trial. Plaintiff's evidence shows that since the accident he has suffered from headaches, aches about his lungs, back, and arms, and general weakness of his arm muscles. His eyes have been painful and his vision impaired. One of plaintiff's doctors testified that plaintiff was totally and permanently disabled. Both of plaintiff's doctors testify that his disabilities are the result of the electric shock which he received. On the other hand, doctors, called by defendant, testify that he has at least part of the disabilities claimed, and one testified that plaintiff was faking in part. Defendant's doctors agree that his disabilities were caused by disease and advanced age, and not by electric shock.

Plaintiff testified he knew that, if he came in contact with an energized electric line, injury might result; that he did not know that this line was energized; that he would not have tried to move the pole had he known it was energized; that the bare wires looked like a telephone line; that he did not know that this line was dangerous to touch; that he did not know that it serviced the dairy farm where he was working; and that his purpose in attempting to move the pole was to get it out of the highway and give a clearance for other employees of the dairy farm to pass with horse-drawn farm machinery, and to avoid the danger of vehicles or animals becoming entangled in the wires or pole.

Plaintiff knew that other vehicles had safely passed the pole by going into the ditch or to the north side of the pole on the graded portion. There were no persons, animals, or traffic on the highway at that point at the time he attempted to move the pole.

On the basis that this was a 2,300-volt line, defendant's witnesses testified that, under the circumstances here, the passage of electricity through a person would seriously burn both flesh and clothes at the point of ingress and egress of the electrical charge. Plaintiff's expert witnesses, admitting that burns might result, testified that they would not necessarily follow in all cases. Defendant's witnesses admitted that, under certain conditions (which they claim did not exist here), a person could be electrocuted without having burns on his body.

Defendant's first assignments of error are that the trial court erred in overruling its motions for a directed verdict at the close of plaintiff's case in chief, and at the time both parties rested their case. These contentions are based upon the propositions that plaintiff's evidence is inherently impossible and clearly against the laws of electricity and the physical facts, and that plaintiff's claim is based upon "a fanciful narrative as to the occurrence of the alleged accident." Defendant in its brief states that its contention is that plaintiff "never was in contact with these wires." There can, however, be no dispute here of the fact that plaintiff came in contact with the wires. Not only does he testify to that fact, but the defendant, by its answer, alleged that the plaintiff "negligently, carelessly, and without any regard for his own safety and with no reason for doing same, took hold of one of the wires mentioned in his petition and attempted to remove it from its then position;" that traffic "had passed around the fallen pole prior to the time that the plaintiff took hold of one of the wires;" that "plaintiff was not acting in any emergency, was not required to attempt to remove said pole and wire, took it upon himself to do so with full knowledge of the dangers present and assumed the risks and danger apparent to his observation

with full knowledge that the wire carried electricity, and that such acts on the part of the plaintiff were gross negligence" which is a bar to a recovery. Defendant cannot now be heard to contend that the plaintiff did not come in contact with the wire. That electric shock and injury would follow from contact with the wires is admitted by expert witnesses on both sides. The dispute comes as to the nature of those injuries and whether or not the plaintiff's then and present condition could result from that shock. As to that, the evidence presented a jury question.

Defendant, on appeal, does not urge that it was not negligent. It does urge that plaintiff's acts in attempting to remove the pole from the highway is negligence as a matter of law which bars recovery.

The decisions of the courts are not in harmony on this question.

In *Workman v. Lincoln Telephone & Telegraph Co.,* 102 Neb. 191, 166 N. W. 550, this court said: "The attribute of human nature which prompts a man, though acting voluntarily, to remove from a public street a menace to the life or to the property of others is not beyond the protection of the law. * * * The authority to remove from a public thoroughfare wrongful obstructions and other dangers is not limited to public officers or to representatives of the wrong-doers. In public places a volunteer, prompted by a purpose to protect the lives or the property of others, may perform reasonable acts necessary to the accomplishment of such a purpose. The freedom to so act implies risks. In commercial enterprises, where dangerous agencies are at work in the streets of cities, such conduct may be anticipated, if the occasion arises. In maintaining conductors of electricity in a city, it is the duty of a telephone company to take proper measures to keep its wires away from public travel and to guard against the escape of electricity by contact with other wires. In the performance of such duties, reasonable attempts of volunteers to remove live wires, if they fall in the streets, should be anticipated. * * * The test of his conduct is the exercise of reasonable precautions to protect himself under the circumstances."

The evidence does not show that plaintiff was negligent or careless in the manner in which he attempted to remove the pole. It was a procedure that one exercising proper care and caution would have followed.

One who is traveling along a public highway and comes upon electric wires and a fallen pole in the traveled portion thereof, with nothing to show that it is a live or dangerous wire, may voluntarily attempt to remove it from the highway if he does so in a careful and prudent manner; and if the wire is energized and he is injured thereby, he is not guilty of contributory negligence as a matter of law which will bar a recovery of damages, for such acts are an incident of travel along the highway and must be anticipated by those who maintain energized wires alongside of traveled public highways. The question of contributory negligence is a matter for the jury to determine. See Croswell, Law Relating to Electricity, 221; *Southern Bell Telephone & Telegraph Co. v. Davis,* 12 Ga. App. 28, 76 S. E. 786; *City of Thomaston v. Atkinson,* 25 Ga. App. 615, 103 S. E. 876; *Fox v. Village of Manchester,* 183 N. Y. 141, 75 N. E. 1116, 2 L. R. A. n. s. 474; *Lewis' Admr. v. Bowling Green Gas Light Co.,* 135 Ky. 611, 117 S. W. 278; 18 Am. Jur. 474; Annotation, 84 A. L. R. 694; 20 C. J. 374; *Workman v. Lincoln Telephone & Telegraph Co., supra.*

Defendant contends, because there were no persons, animals, or other property on the highway at the time the plaintiff attempted to remove the pole and wires, that there was no imminent danger to any one, that no emergency existed, that plaintiff was guilty of contributory negligence as a matter of law, and that the trial court should so have instructed the jury. In that respect, the situation in the instant case is no different than the situation in *Workman v. Lincoln Telephone & Telegraph Co., supra.*

Defendant further contends that it was error to instruct the jury on the question of whether or not an emergency existed.

Plaintiff's position is that he undertook to remove the pole because of the danger to persons using the highway

who might become entangled in the wire and pole. True, westbound traffic could see and go around the pole. However, eastbound traffic would come upon it, across their lane of travel, at a distance of 50 to 75 feet after they crossed the crest of the hill. To such traffic it was an obvious hazard. Defendant argues that plaintiff knew or should have realized that the lines were energized, and a source of danger, because of that fact. On that basis, the hazard from the pole and wires to persons and property on the highway is apparent.

An emergency is not the subject of an exact definition. This court has accepted the following definitions:

"Any event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency; a sudden or unexpected happening; an unforeseen occurrence or condition." "A sudden or unexpected happening; an unforeseen occurrence or condition; specifically, a perplexing contingency or complication of circumstances; a sudden or unexpected occasion for action; exigency; pressing necessity." *Colfax County v. Butler County,* 83 Neb. 803, 810, 120 N. W. 444.

"It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the * * * chattels * * * of a third person from harm." 2 Restatement, Torts, sec. 472.

In order to relieve a person from a charge of contributory negligence as a matter of law in attempting to save persons or property from harm, it is sufficient, if to a reasonably prudent person, the existing circumstances create the apprehension of danger even though danger to a definite person or a definite property was not actually imminent at the moment. 45 C. J. 968, citing *Workman v. Lincoln Telephone & Telegraph Co., supra;* 45 C. J. 962, 965.

The extent of the risk which a person is justified in taking under the circumstances increases in proportion to the imminence of the danger and the value of the advantage that can be realized from encountering the danger and attempting to remove its hazards. Or, stating it conversely,

the less the danger to a third person or property, the less the risk which a party may encounter in acting to save life or property without becoming guilty of contributory negligence. See Restatement, Torts, *supra*.

The trial court instructed the jury as follows: "You are instructed that if you find from the evidence that it was not necessary for the pole and wires to be moved at the time plaintiff acted in order that traffic could safely pass along the highway or to save others from an immediate danger, and that plaintiff knew, or, acting as a reasonable man under the circumstances, should have known that the pole was a transmission line and that the wires thereon carried a dangerous electric current but, nevertheless, voluntarily exposed himself to the danger by attempting to move it from the highway, then your verdict should be for the defendant."

The instruction was as favorable as defendant was entitled to have given under the issues and facts of this case. The trial court did not commit error in overruling defendant's motion for an instructed verdict.

The defendant further contends that it was the duty of the trial court to instruct the jury that (a) the plaintiff "assumed the risk which was apparent to him from his observation and knowledge;" (b) "that there was no emergency requiring any action by the" plaintiff; (c) that the plaintiff "knew that these wires were charged with electricity and dangerous." As to (a) the trial court instructed the jury as follows:

"You are instructed that inasmuch as the employment of electricity is dangerous and liable at all times to cause accidents, that ordinarily those transmitting it should have the right to select their own agents or employees for handling or guarding it, and others coming in contact with it should use ordinary care corresponding to its dangers in order to save themselves and others from injury, and no person should unnecessarily, as a mere volunteer, interfere with it and expose himself to danger. If there is no emergency, one who knowingly and unnecessarily, as a mere volunteer, does

some act exposing himself to danger, he thereby assumes the risk of accident and, in such case, cannot complain of the negligence of other persons. A higher degree of care is required from one who knows of the danger or who, under the circumstances, should know of the danger than would be required from a person without such knowledge or notice thereof. A person who does not have knowledge or notice of the danger is required to use the ordinary care which an ordinarily prudent man would use under the same or similar circumstances."

The proposition raised by (b) has already been considered. As to (c) it would have been error to have so instructed the jury under the facts as testified to by the plaintiff.

The defendant contends that the trial court erred in refusing to give a requested instruction as follows:

"You are instructed that the law places a duty upon a person of full age and in possession of his faculties, to guard against doing an imprudent thing and requires such person to use the senses with which he is endowed to refrain from putting himself in a place of danger."

In addition to the instruction hereinbefore set out, the trial court instructed the jury that:

"By 'negligence' is meant the doing of some act under the circumstances surrounding the accident involved which a man of ordinary prudence would not have done, or the failure to do some act or to take some precaution which a man of ordinary prudence would have done or taken. * * *

"You are instructed that electricity is a dangerous thing, and all persons using, coming in contact with, or handling it in any way, should exercise a high degree of care in proportion to the dangers incident to its use, and failure to exercise such ordinary care according to the circumstances would constitute negligence."

In view of the instructions given and the general nature of the requested instruction, the trial court did not err in refusing to give the tendered instruction.

Finally, the defendant urges that the verdict is excessive.

The judgment was for $2,500. The undisputed value of medical services of the plaintiff was $990. Accepting, as we must from the jury's verdict, the truth of the testimony of plaintiff and his witnesses as to his injuries, their cause, and their extent, the verdict is not excessive.

No prejudicial error is found. The judgment of the trial court is

AFFIRMED.

CARTER, J., dissenting.

This is the second appearance of this case in this court. On the first appeal, the action of the district court in entering a judgment for defendant notwithstanding the verdict was reversed on the authority of *Winterson v. Pantel Realty Co.,* 135 Neb. 472, 282 N. W. 393. I am in accord with the view that the trial court should have granted a new trial instead of a judgment for defendant notwithstanding the verdict.

After the case was remanded, the motion for a new trial was called up for hearing. The trial judge, after having ruled that defendant was entitled to judgment notwithstanding the verdict, overruled the motion for a new trial. It is quite apparent that reason must exist for entering orders so inconsistent.

It appears by the opinion filed in the former appeal that this court not only determined that a judgment notwithstanding the verdict was not an available remedy, but it contained language indicating that the motion for a new trial, not yet passed on by the trial court, ought also to have been overruled. The particular language which undoubtedly misled the trial court is: "The pleadings of plaintiff and defendant formed issues of fact which the Constitution requires be submitted to a jury for determination." *Wolfinger v. Shaw,* 136 Neb. 604, 287 N. W. 63. It is axiomatic, of course, that this court cannot properly rule on a motion for a new trial before it has been presented to the trial court. As a result of these unfortunate circumstances, the defendant has been deprived of the retrial of the case which the

trial court evidently would have granted except for his misinterpretation of the former opinion.

To me the evidence does not warrant a recovery because of the contributory negligence of the plaintiff. His testimony that he did not know the lines were energized does not appear at all convincing in view of his subsequent evidence that he attempted their removal because of the danger to the public. His story of his contact with these highly energized lines without suffering burns or other external evidences of injury, plus his failure to make complaint for several days afterwards, ought to arouse the credulity of an experienced court. It is evident that no emergency existed at the time, as the plaintiff himself says that his attempt to remove the pole and wires was an impulsive one not based on any immediate danger to any one. The evidence shows that he knew the wires and pole were down and that the defendant Shaw had been notified. Traffic had gone around the obstruction as was evidenced by tracks on the highway. With this knowledge and without any imminent danger to the public having manifested itself, plaintiff negligently placed himself in a dangerous position. He ought not be permitted to profit by his own negligence and recover for risks which he assumed.

Under the circumstances of this case, a new trial ought, at least, be granted.

PAINE, J., concurs in the dissent.