**CLIFTON, etc., Plaintiff-Appellee, v. HOLLIDAY, etc., Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 7061. Decided February 21, 1949.

474

John M. McCaslin, Richard H. Pennington, Cincinnati, for plaintiff-appellee.

Robert M. McIntosh, Peter J. McCarthy, Cincinnati, for defendant-appellant.

## OPINION

By ROSS, PJ.:

This is an appeal on questions of law from a judgment of the Common Pleas Court of Hamilton County, entered upon a verdict of a jury in favor of the plaintiff in the sum of $2,000.00, and reduced by the Court, on consent of plaintiff to remittitur, to $1000,00. Summons was returned October 6, 1947.

The plaintiff, in her amended petition, states that she is

a minor, and that the defendant operates the "Beechmont. Riding Club" where saddle horses may be hired for riding,. that on May 20, 1947, at about 4:00 o'clock in the afternoon, she applied to the defendant's employee for a saddle horse to ride, that a horse was saddled for her, that she mounted it and was directed by such employee to ride the horse to a nearby "riding ring" (a circular path used for exercising. horses), that she proceeded toward the ring, "but that after having gone about seventy-five feet the horse turned and bolted toward the stable door, that she was **unable to control the horse** (emphasis ours) and was carried through the door into the stable," that her head struck a beam and she was thrown off the horse and severely injured, her scalp being badly cut and torn. Plaintiff states further that the defendant was negligent in that "knowing the **proclivities of horses.** (emphasis ours) to return to the stable, habitually, kept a bar across the aforementioned door just for the purpose of preventing horses from running back to their stalls from outside, but that said defendant failed to place said bar across the stable door during the time plaintiff attempted to go riding."

The answer was in effect a general denial.

Trial resulted in a verdict for the plaintiff of $2000.00. Motion non obstante was filed by the defendant and overruled. Judgment was entered on the verdict for $2,000.00. Motion for new trial was filed and, after consent to remittitur of $1,000.00, was overruled, and judgment entered for the sum of $1,000.00. Appeal on questions of law is taken to this Court from such judgment.

It may be questioned whether the petition in this case states a cause of action, in any event, the evidence fails to sustain any cause of action against the defendant.

It appears from the evidence that the plaintiff, a young married woman, eighteen years of age, lived in the neighborhood of defendant's stables, and saw various persons hiring horses and riding them, that upon the day hereinbefore mentioned she went over to the defendant's stables and asked an employee for a horse to ride, that she was asked if she could ride and told the attendant she had ridden before. It appears from her own evidence that plaintiff had been riding horses ever since she was twelve years of age and was thoroughly familiar with saddle horses. Plaintiff told the attendant that she did not want a "dead head." She was shown a particular horse and said he would be satisfactory.

Plaintiff was directed to try the horse first in a nearby riding ring and started to ride toward it, when, feeling that the

saddle was loose, turned the horse about to ride back and have the saddle adjusted.

When the horse was turned it "reared up, took off towards the barn."

The plaintiff states she "sawed" on the reins, but the horse ran back to and into the lower part of the barn through a low door, toward its stall. The plaintiff "ducked" the lintel of the door, but apparently a low beam inside the barn struck her head and she was knocked from the horse suffering severe injuries to her scalp and head.

There is not the slightest evidence in the record to indicate that this particular horse possessed any peculiar characteristic not common to all saddle horses. In fact, it will be noted in the amended petition, and the testimony of a number of witnesses for the plaintiff sustain the statement therein, that it is a normal characteristic of horses in general and particularly hired riding horses to return to their stalls if permitted to do so. The plaintiff states the defendant knew this and should have had a bar across the entrance to the stable. There is evidence that the defendant at times maintained a bar across the entrance to the stalls. There is no evidence that this fact was known to the plaintiff. The familiarity with horses, admitted by plaintiff, would justify the conclusion that she also knew of this normal propensity of horses to return to their stalls. There is not the slightest evidence that this particular horse was vicious or intractable, or more unmanageable than any normal horse.

The position of the plaintiff in assigning the absence of the bar across the door as the **proximate cause** of her injuries, presupposes that the horse either was not or could not be controlled by the rider, for if it is a normal characteristic of all horses to return to their stalls, certainly it would seem that, unless controlled, they will do so. Two things will keep them from going back to their stalls, one, control by the rider, the other, an obstruction across the entrance to the stalls. If the rider has no responsibility, it is difficult to see how a horse could ever be ridden away from the stable.

Wherever horses are used for riding, there is present a contest of wills, the inclination of the horse, and the purpose of the rider. If the latter does not know how to control the normal horse, obviously the horse will have its way. Again, there is no evidence that this particular horse had any characteristic not possessed by riding horses in general which would prevent normal control of his actions.

The obvious, inescapable conclusion, deducible from the evidence, is that the plaintiff's injuries were caused solely be-

cause she could not or did not control this (according to her own statement and allegation) perfectly normal horse.

To justify the plaintiff's conception of liability in the defendant, it must be accepted as a predicate that all horses are uncontrollable, that is, that riders have no control over their actions, that they will all run to their stalls, and that the sole means of preventing injury to such riders is to have bars across the entries to their stalls. In other words, that one who hires a saddle horse is not presumed to be able to control his movements. Such a predicate for responsibility is completely untenable and has been repudiated by all courts considering cases involving questions of liability growing out of the use of hired saddle horses.

The syllabus in **Troop A Riding Academy v. Miller, 127 Oh St, 545,** is as follows:

"One who rides a horse, which he has hired for that purpose, takes the ordinary risks incident to such pursuit.

"In order to recover for injuries received when a horse hired for riding runs and falls, one who sues in tort must show knowledge, on the part of the owner or his agents, of some trait, condition or propensity from which a probability of the horse's running away or falling might reasonably be inferred.

"When there is no evidence of any known trait, condition or propensity of the horse, which would subject the rider to greater risks than ordinarily attach to horseback riding, it is error for the trial judge to submit such case to the jury. Defendant's motion for an instructed verdict should be granted."

To the same effect is **Reynolds v. Kenwood Riding Club, Inc., 59 Oh Ap, 453,** where it is stated in the first paragraph of the syllabus:

"A person riding a hired horse must take the ordinary risks incident to such pursuit and, in order to recover in tort from the owner of the horse for injuries sustained as a result of being thrown from the horse, the rider must show that the owner had some knowledge of a trait, condition or propensity of the horse, which was not as obvious to the rider as to the owner that would subject the rider to greater than the ordinary risks of riding."

There may be peculiar circumstances involving a particular horse, justifying liability as where the rider is young and inexperienced, and the horse is known by the owner to be unbroken, as was the case in **Cousino v. Huss, 71 Oh Ap, 107,** or where the equipment furnished with the horse is defective, or improperly or negligently adjusted, as was the case of **Wenrick v. Hendrickson, etc., 17 Abs, 451, 455.**

Negligence is never presumed. It must be proved, and it must be shown to be the proximate cause of plaintiff's injuries.

There is no evidence in the record indicating a standard of care appropriate to the operation of riding facilities requiring a bar across the door or entrance to the stalls for horses rented for riding. On the contrary, the evidence is to the opposite effect. That it is necessary to introduce evidence sustaining such standard of care in cases in which the public has not common knowledge of the requirements is held in **Englehardt, etc., v. Philipps, etc., 136 Oh St, 73,** where it is stated in the second paragraph of the syllabus:

"Legal liability for negligence is based upon conduct involving unreasonable risk to another, which must be established by affirmative evidence tending to show that such conduct falls below the standard represented by the conduct of reasonable men under the same or similar circumstances."

And, at page 78 of the opinion, it is stated:

"Legal liability for negligence is based upon conduct involving unreasonable risk to another which must be established by affirmative evidence tending to show that such conduct falls below the standard represented by the conduct of reasonable men under the same or similar circumstances. Moreover, in determining whether the defendant should recognize the risks which are involved in his conduct as being unreasonable, only those circumstances which the defendant perceives or should perceive at the time he acts or fails to act are to be considered. Until specific conduct involving such unreasonable risk to the plaintiff is made manifest by some evidence, there is no issue to submit to the jury."

The defendant moved for a directed verdict in the case at bar, at the conclusion of all the evidence. This motion should have been granted, and this Court will render the judgment for the defendant which the trial court should have rendered.

This action renders it unnecessary to comment on other assignments of error.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.