Joycelyn Schlotman Baty, appellee, v. Ernest C. Wolff, appellant.
74 N. W. 2d 913

Filed February 17, 1956.   No. 33829.

(1)

2

*Schmid, Snow, Ford & Deming* and *Donald H. Mc-Arthur,* for appellant.

*Charles S. Reed* and *Franklyn K. Norris,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

In this action plaintiff sought to recover damages for injuries resulting from being thrown from a riding horse which she rented from defendant, a riding stable operator. Issues were made and trial was had resulting in a substantial verdict for plaintiff.

Defendant moved for judgment notwithstanding the verdict, or in the alternative for a new trial. The motions were overruled. Defendant appeals. We reverse the judgment of the trial court and remand the cause for a new trial.

Plaintiff pleaded that defendant was engaged in the business of renting riding horses to the public; and that she was at the time of the accident of the age of 16 years and known by the defendant to be an inexperienced horseback rider. She pleaded her riding experience with the horses rented from the defendant; that on July 2, 1953, she went to defendant's stable to rent a riding horse; that defendant rented her a recently purchased horse without knowing whether said horse was gentle or safe; that before taking the horse which was furnished to her she advised defendant's employee that she doubted if she could handle the horse and was advised that the horse would handle as easy as the horses she had been accustomed to riding; and that she rode the horse, and without warning or provocation it became unmanageable and ran with her into a public street. She alleged that an automobile was in the street and towing a second car; that the horse ran into the first car; and that plaintiff was thrown into the air and landed on top of the car being towed. She then alleged

that the defendant knew, or in the exercise of reasonable precaution should have known, that the horse was unsafe for riding by the plaintiff, and that it was negligence for defendant to rent the horse to plaintiff. She then alleged her resultant damages and prayed for their recovery.

Defendant for answer denied generally. He admitted that he was engaged in the business of renting riding horses to the public; that he had rented a horse to the plaintiff on July 2, 1953; and that a collision occurred with the automobile while plaintiff was riding.

Defendant denied negligence and alleged that he had no notice or knowledge and in the exercise of reasonable care could not have known of any dangerous propensities of the horse; and that it was carefully selected and tested to assure its suitability for rental purposes.

He alleged that the collision was the direct and proximate result of plaintiff's negligence in that she failed to exercise due and reasonable care to maintain control of the horse; and in that after experiencing difficulty with the horse she had an opportunity to dismount as an ordinary person of her age and experience would or should have done in the exercise of due care.

He further alleged that in renting and riding the horse plaintiff knew, or should have known, that the horse might become frightened and unmanageable, and assumed the risk.

Issues were made on a cross-petition of defendant. That cause was dismissed by the trial court and is not involved in this appeal.

On the second day of the trial and before plaintiff had rested, plaintiff by leave of court, over the objection of defendant, amended her petition so as to allege the correct name of defendant's employee who, she alleged, had given her assurances as to the horse, and so as to further allege that "plaintiff was induced to ride the horse on his assurance that the horse was safe for her to ride."

The above is a summary of the issues upon which the case was tried.

Defendant contends that the trial court should have sustained his motion for a directed verdict because there was no proof of negligence on his part; that plaintiff was guilty of negligence sufficient to bar her recovery; and that she had assumed the risk involved.

It does not appear that we have heretofore stated the rule involving bailment for hire of riding horses under these circumstances.

In 54 Corpus Juris Secundum, Livery-Stable Keepers, section 17, page 645, the rule is stated in this way: "As a general rule a livery-stable keeper who lets a horse for hire impliedly promises or warrants that the horse is suitable for the purpose for which it is let, and he is liable for injuries resulting from the viciousness or dangerous propensities of the horse if he had knowledge, or, in the exercise of reasonable care, should have had knowledge, of such viciousness or propensities."

In 24 American Jurisprudence, Garages, Parking Stations, and Liveries, section 38, page 498, the rule is stated as follows: "A livery-stable keeper who knows of the viciousness of a horse he lets for hire, or, by the exercise of reasonable care, ought to know of its viciousness, is liable for injuries resulting therefrom to the hirer. It is the duty of a livery-stable keeper to inform himself of the habits and disposition of the horses which he keeps in his stable for hire; and if he knows that they are dangerous and unsuitable, or, by the exercise of reasonable care, can ascertain such facts, he is liable for any injuries to his customers resulting from their vicious propensities. A liveryman, however, does not warrant that a horse is free from defects which he does not know of and which he cannot discover by the exercise of due care."

In the annotation to 131 American Law Reports at page 847, the rule is stated as follows: "* * * one who lets a horse for hire, although not an insurer of the

horse's fitness, is under an obligation, sometimes spoken of as an implied warranty, to furnish an animal which is reasonably safe for the purpose known to be intended, and for a failure to use due care to discover dangerous propensities in such animals, or to disclose them to the hirer, he may be held liable for personal injuries or death resulting from such neglect; * * *."

We state the evidence in the light of the established and often repeated rule that in determining such a motion the plaintiff is entitled to have every controverted fact resolved in her favor and to have the benefit of every inference that can be reasonably deduced from the evidence.

Plaintiff offered evidence as follows:

The defendant had two employees who are referred to in the record as "Carl" and "Charlie." We will use those names.

Plaintiff began her riding at the defendant's stables on May 31, 1953. She explained to Carl and Charlie that it was the first time she was to ride and asked for a gentle horse. Thereafter she rode some six or seven times on two different horses without incident.

The afternoon of July 2, 1953, she and five companions went to the defendant's stables to ride. Plaintiff asked Carl for the horse she had ridden the last time. Charlie then came in from the trail riding the horse involved in this accident. The horse was "rearing" and "acting up." Charlie asked plaintiff to ride the new horse. She was "kind of afraid of him." Charlie said he was "okay" and that plaintiff could handle him. While they were debating about it Carl came up and said that plaintiff should not have the new horse and that he (Carl) didn't think plaintiff should handle him. Charlie persisted. Carl said, "Well, be careful then." Charlie persuaded plaintiff to ride the horse around the barn. The third or fourth time around he got "a little high," became unmanageable, and ran. Plaintiff told Charlie she could not take

him and was told that the horse would be all right after he got on the trail.

Charlie then left to go up the trail with another party. Plaintiff rode in that direction. The horse ran and she had a hard time stopping him. Charlie was there where the horse stopped. Plaintiff told him that she could not handle the horse and was going to take it back to the barn. Charlie said: "He is like this when he is alone, but when he is with other horses in a group he will be okay" and "Go on, try him."

Plaintiff then rode back up to the barn, joined with two of her friends, and started back up the trail. The horse "took off" and ran again, left the trail, went over a hill and onto a golf course where plaintiff finally got him stopped. Her companions came up and with one on either side they started back to leave the horse at the barn. The horse "bolted," ran through the park, across the street, and into the car. Plaintiff tried to stop him and could not. At no time did she urge the horse to go faster than at a walk.

Defendant to sustain his defense of due care, offered evidence summarized as follows:

The riding horse involved in this matter was 9 years old. Prior to its ownership by the defendant it had been used by a farmer about his farm, on the highway, and in handling cattle. The farmer was an experienced rider. The horse showed no unsafe characteristics at that time. About 6 months before the accident it was purchased by an Omaha man who used it in connection with other riding horses for private riding and not for hire. It was ridden by adults and a 14-year-old girl who was an experienced rider. The latter testified that usually this riding was done on or about the premises of the owner. There were four children who often rode at the same time, each having his certain horse. "* * * we would always race up and down the lane to see which horse won, and my horse always won." "Every time we went down and up we would run them," and that this

occurred "a good many times." It does not appear defendant knew of this use.

The defendant purchased the horse from the above owner and just before doing so the 14-year-old girl had ridden the horse to defendant's stables. The defendant purchased the horse on June 30, 1953, and it was delivered either that day or the next day. Before buying the horse defendant rode it about the ring and his premises. The defendant was an experienced rider. Other boys and men, all experienced riders, rode the horse under like circumstances. The riding was without incident. The horse was shod on Wednesday, July 1, 1953.

On July 1, 1953, after the horse was shod, Carl rode him twice around the bridle path, a trip of probably an hour and a half. After Carl had ridden the horse, the defendant then rode it through the park for some 4 or 5 miles to get the horse acquainted with the path and find out "if he would be a useful horse for a beginner or an amateur rider." Defendant did not test the horse by having it ridden by an amateur rider, nor did he test it by riding it with other mounted horses on the trails.

The question then is: Is plaintiff's evidence sufficient as a matter of law to take the issue of negligence to the jury under the above rules?

We deem the evidence sufficient as against the test of a motion for a directed verdict. It presents a jury question.

Defendant further contends that when the plaintiff stopped the horse on the golf course, before starting to the barn, and before the horse bolted the last time, she was then in control of the situation; she knew the propensities of the horse; defendant's employees were not there; plaintiff could have then dismounted and walked to the barn; that she elected to continue riding the horse and thereby assumed the risk; and that because of that fact, a directed verdict for the defendant should have been made.

In Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82,

149 A. L. R. 1041, we discussed the conditions under which the doctrine of assumption of risk was applicable in negligence cases. That was an action for personal injuries resulting from an automobile accident. The evidence showed a long-continued period of riding in a car at excessive speeds for a considerable distance and the use of intoxicating liquors. It appeared that near the end of the journey, and before the accident occurred, the plaintiff had an opportunity to get out of the car at a point where other transportation was available. Assumption of the risk was urged. We held that factor entered into and was a part of the question of contributory negligence which should be submitted to the jury.

Applying language quoted with approval in that opinion to the situation here, the rule is that where a riding horse bailed for hire has shown unmanageable characteristics, the bailee is not required to dismount merely if he has a reasonable opportunity to do so, but he must do so, a reasonable opportunity being afforded, if a person in the exercise of ordinary care would do so under the circumstances. That presents a jury question under the evidence here.

The trial court did not err in denying defendant's motion for a directed verdict.

Plaintiff pleaded that "under the attendant circumstances, it was negligence for the defendant to furnish this unsafe horse to the plaintiff when defendant knew, or in the exercise of reasonable precaution, should have known the horse was unsafe for riding by the plaintiff." Defendant joined issue on that matter.

The trial court in its instruction No. 3 told the jury that "before plaintiff can recover * * * the burden is upon her to prove by a preponderance of the evidence that the collision was caused by negligence of the defendant * * * in renting to her the particular horse in question."

Defendant complains of the insufficiency of the instruction. The court did not point out in this nor in any

other instruction the elements of negligence which the plaintiff was required to prove, nor did the court set out the standards or the duty of care owing by the defendant to the plaintiff. The jury was left to be its own judge of issues, what constituted negligence, what were the rights of the plaintiff, and the measure of the liability of the defendant.

Again in instruction No. 4, the court told the jury if it found that the plaintiff "used reasonable care and that the accident was caused by negligence of the defendant, then your verdict will be in favor of the plaintiff."

In instruction No. 5, the court told the jury that it was its duty to determine whether plaintiff's continuing to ride the horse was caused by the assurances of the defendant's employee Charlie "and if plaintiff has made such proof of negligence on the part of defendant by a preponderance of the evidence, then it will be your duty to return a verdict for the plaintiff * * *." Obviously by this instruction the court took from the jury all questions of negligence and contributory negligence. It caused the defendant's liability to be decided on the sole questions: Were the assurances made, and did the plaintiff continue to ride the horse because of the assurances?

By instruction No. 6, the court instructed the jury that defendant alleged that "the accident was caused by negligence of the plaintiff in failing to exercise due care in the handling of the horse. This is called contributory negligence."

Defendant also alleged plaintiff's negligence in failing to dismount as an ordinary prudent person of her age and experience would or should have done. At no place in the instructions was that question submitted to the jury, although it was a proper element under the evidence on the issue of contributory negligence.

The trial court instructed the jury that before the defendant could avail himself of the defense of contributory negligence, he had the burden of establishing by a preponderance of the evidence that the plaintiff was guilty

of negligence. Again there were no standards or statement of issues given to the jury.

The trial court did not advise the jury as to what its finding was to be if contributory negligence was proven. Nor did it instruct as to comparative negligence as it exists in this state. See § 25-1151, R. R. S. 1943.

The errors in the instructions above reviewed are obviously prejudicial to the defendant and require a reversal and remand for a new trial.

Defendant further assigns error as to the instruction on the measure of damages. This subject is extensively discussed in our opinion in Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643, wherein we stated this concluding rule: "A jury should be fully and fairly informed as to the various items of damages which it should take into consideration in arriving at its verdict. In this respect it is the duty of the trial court to instruct as to the proper basis upon which damages are to be assessed for each such item."

A reversal being required, we do not deem it necessary to discuss this assignment at length. The instruction is confusing at best in that in the concluding sentence it refers to the pain and suffering which plaintiff will endure in the future and then appears to limit the compensation to the pain and suffering "that she has endured." Such an instruction could be prejudicial to the plaintiff, and about it plaintiff makes no complaint. We refer to it here as indicative of the care that should be exercised in the drafting of instructions.

Defendant also complains of the failure of the court to give a large number of tendered instructions. To decide those questions at this point would be to anticipate the requirements of facts and issues at a subsequent trial.

It is the duty of the court to instruct the jury upon the issues presented by the pleadings and supported by the evidence, whether requested to do so or not. Borcherding v. Eklund, *supra.*

The fact that we have not discussed requested instructions or other instructions given is not to be construed as approval or disapproval of them.

Defendant also assigns as error the allowing of the plaintiff to amend her petition during the course of the trial; the striking and excluding of opinion evidence as to the character and suitability of the horse; the failure to grant a motion for a mistrial; and that the verdict is excessive. These are matters which may not arise in a new trial and are not necessary for determination now.

The judgment of the trial court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.