DONNA HUBER, APPELLANT, v. E. JAY TIMMONS ET AL.,
APPELLEES.

171 N. W. 2d 794

Filed November 7, 1969. No. 37159.

Paul H. Harmon and Edward J. McCarthy, for appellant.

Gross, Welch, Vinardi, Kauffman, Schatz & Day, Kennedy, Holland, DeLacy & Svoboda, Joseph P. Cashen, William J. Reidmann, and Lyman L. Larsen, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

This is a personal injury action. Plaintiff attended a concession providing Shetland pony rides for children in a small arena. She purchased a ride for her daughter and walked alongside as the pony was led around the

arena. The pony reared and bolted. Plaintiff seized the saddle, was dragged along, and injured.

At the conclusion of plaintiff's evidence in the trial court, her petition was dismissed on motion of defendants and judgment entered for defendants. We affirm the judgment of the district court.

Plaintiff was a member of St. Joan of Arc Catholic Church. The church, or certain groups connected with the church, conducted an annual carnival for fund-raising purposes. Numerous booths, concessions, and rides were available to the public, including the Shetland pony and other concessions owned and operated by defendant Pony Rides, Inc. Plaintiff, a member of the church, accompanied by her 5-year-old daughter, attended the carnival in the evening. Plaintiff purchased a ticket entitling her daughter to a pony ride. The ponies were led around the arena by young boys who supplied such services gratuitously at the solicitation of members of the church. Tickets were sold by church members but were taken up by the concessionaire and all operations connected with the concession were under the control of, and conducted by, the concessionaire.

As her daughter was placed on a pony, plaintiff observed that it was to be led by Mark Donnelly, a 9-year-old boy with whom plaintiff was well acquainted. After a man placed plaintiff's daughter on the pony, he asked plaintiff if she wanted to let her daughter ride alone. Plaintiff replied that she wanted to walk beside her daughter and proceeded to do so. As they proceeded around the arena, the pony suddenly reared and bolted. Plaintiff sought to protect her daughter, was unable to seize the bridle reins, but did take hold of the saddle and was dragged for a short distance until the pony was stopped by an attendant. She was kicked or stepped on by the pony and sustained a severed Achilles tendon of the right heel.

Mark Donnelly attributed the pony's action to fright caused by a panel truck, with its lights on, driving

rapidly into a parking area a short distance from the pony and coming to a sudden stop. Mark became frightened and stepped back when the pony bolted. He did not know whether the pony jerked away from him or he let go.

Plaintiff stated that her brother had at one time had a pony, that she and her husband owned a Shetland pony they had purchased for their daughter, that the children were not permitted to ride it except in the presence of their father or grandfather, and that she was somewhat familiar with ponies.

Plaintiff charges negligence in that the pony was not properly controlled and was placed in charge of an immature and inexperienced handler. Defendants pleaded a general denial, contributory negligence, and assumption of risk.

One who lets a horse for hire warrants the horse to be suitable for the purpose for which it is let and is liable for injuries resulting from the viciousness or dangerous propensities of the horse if he had knowledge, or, in the exercise of reasonable care, should have had knowledge, of such viciousness or dangerous propensities. See Baty v. Wolff, 162 Neb. 1, 74 N. W. 2d 913. Ordinarily the existence of vicious or dangerous propensities in a domestic animal and knowledge of such propensities are indispensable to liability on the part of the owner. See, Durrell v. Johnson, 31 Neb. 796, 48 N. W. 890; 4 Am. Jur. 2d, Animals, § 89, p. 336. There are many characteristics common to all horses, even the most gentle. One such characteristic is their propensity to rear or bolt when frightened. It is one of the situations that one riding a horse must expect to encounter and one riding a hired horse must take the risks incident to such pursuit. See, Clifton v. Holliday, 85 Ohio App. 229, 88 N. E. 2d 304; 4 Am. Jur. 2d, Animals, § 86, p. 332.

The foregoing rules deal primarily with instances in which a horse when hired is ridden off and fails to remain under the supervision of the owner who cannot

ensure that the horse may not shy and unseat its rider when frightened. The present case is not one in which a horse is let to an experienced horseman. On the contrary, the concession was one primarily designed to cater to children of all ages, including plaintiff's 5-year-old daughter. The ponies remained at all times under the supervision of the concessionaire and the fact that the patrons of the concession were children is a factor to be considered in determining if reasonable care was exercised. See, Dee v. Parish, 160 Tex. 171, 327 S. W. 2d 449; Pullen v. Novak, 169 Neb. 211, 99 N. W. 2d 16. "Even in the absence of any known viciousness in a domestic animal, its owner is obliged to exercise over it a certain degree of care depending upon the kind and character of the particular animal concerned, the circumstances in which it is placed, and the purposes for which it is employed or kept. The owner * * * is charged with knowledge of the natural propensities of animals * * *, and, if these propensities are of the kind that might cause injury he must exercise the care necessary to prevent such injuries as may be anticipated." 4 Am. Jur. 2d, Animals, § 89, p. 337. See, also, 3 C. J. S., Animals, § 145, p. 1247; Fox v. Koehnig, 190 Wis. 528, 209 N. W. 708, 49 A. L. R. 903.

Considering the youthfulness of defendants' patrons, the natural propensities of horses, and the youth and inexperience of Mark Donnelly, we find a jury question would normally have been presented regarding whether or not defendants were negligent in entrusting the pony to his care.

It is true that it was the mother, and not the child who rode the horse, who has been injured. This is not material as she was as much entitled to rely upon the use of reasonable care by defendants in accordance with existing circumstances as was her daughter.

The defenses of contributory negligence and assumption of risk are not here available insofar as they pertain to plaintiff's actions while attempting to protect her child from injury. A person who attempts to rescue another

placed in imminent peril does not assume the risk incident thereto and is not guilty of contributory negligence unless he acts in a rash, imprudent, or negligent manner. See 65A C. J. S., Negligence, §§ 124 and 174 (5), pp. 84 and 301; 38 Am. Jur., Negligence, § 228, p. 912; Wolfinger v. Shaw, 138 Neb. 229, 292 N. W. 731. The preceding rule would not be applicable to plaintiff's action in proceeding with the ride after becoming aware of the fact that Mark Donnelly was to lead the pony.

According to plaintiff's testimony, she was familiar with ponies and their natural propensities. She was well acquainted with Mark Donnelly who was about the same age as, and a playmate of, her son. She and her husband had sufficient knowledge of the hazards to be encountered when dealing with ponies so that they refused to let their 5-year-old daughter or their son, who was about Mark Donnelly's age, ride the pony they owned except in the presence of their father or grandfather. Notwithstanding this knowledge and her observation that Mark Donnelly was to be in charge of the pony ridden by her daughter, plaintiff elected to proceed. She had as much, or more, knowledge of Mark Donnelly's previous experience and ability to handle horses as the defendants. Under these circumstances she alleges that defendants were negligent in entrusting the pony to Mark Donnelly's care; yet, she denies, despite her own knowledge and experience, that she was guilty of contributory negligence or assumed the risk of injury. Her position is, at best, extremely contradictory. If defendants were negligent, she was necessarily guilty of contributory negligence. Since any negligence of the defendants, and any contributory negligence of the plaintiff, stem from the same identical situation, the one cannot be lesser or greater than the other. A case for submission under the rules of comparative negligence is not presented and we are necessarily obliged to find that plaintiff was guilty of contributory negligence sufficient to bar her recovery as a matter of law.

The judgment of the district court is affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I do not agree that the plaintiff was guilty of contributory negligence as a matter of law. If there was contributory negligence, it would be a question of fact which should have been submitted to the jury under proper instructions.