******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTHONY VENDRELLA ET AL. *v.* ASTRIAB FAMILY
LIMITED PARTNERSHIP ET AL.
(SC 18949)

Rogers, C. J., and Zarella, Eveleigh, McDonald, Espinosa and Vertefeuille, Js.

*Argued September 24—officially released April 1, 2014*

*Steven L. Seligman,* with whom, on the brief, were *Lester Katz* and *Christian Sterling,* for the appellants (defendants).

*Hugh D. Hughes,* with whom were *Joseph D. Foti, Jr.,* and, on the brief, *William F. Gallagher* and *Garrett Moore,* for the appellees (plaintiffs).

*Doug Dubitsky* and *Lisa Solomon* filed a brief for the Connecticut Farm Bureau Association et al. as amici curiae.

*Opinion*

ROGERS, C. J. The primary issue that we must resolve in this case is whether the keeper of a horse has a duty to exercise reasonable care to prevent the horse from causing injuries to others when the particular horse has not previously exhibited mischievous propensities, but the trier of facts reasonably could find that horses as a species have a natural propensity to bite. The plaintiffs, Anthony Vendrella (father) and his son, Anthony John Vendrella (minor plaintiff),[1] brought this action for personal injuries incurred when a horse known as Scuppy, which was kept at a facility owned by the defendants, Astriab Family Limited Partnership and Timothy D. Astriab,[2] bit the minor plaintiff. The defendants filed a motion for summary judgment contending that there was no genuine issue of material fact as to whether the defendants had actual or constructive notice that Scuppy had mischievous propensities. The trial court granted the motion and rendered judgment for the defendants. The plaintiffs appealed to the Appellate Court, which reversed the judgment of the trial court. *Vendrella* v. *Astriab Family Ltd. Partnership*, 133 Conn. App. 630, 660, 36 A.3d 707 (2012). We then granted the defendants' petition for certification to appeal.[3] *Vendrella* v. *Astriab Family Ltd. Partnership*, 304 Conn. 919, 41 A.3d 306 (2012). The issues that we must resolve on appeal are: (1) Did the Appellate Court properly conclude as a matter of law that a defendant has a duty of care to prevent injuries caused by a domestic animal that did not have known mischievous propensities if the injuries were foreseeable because the animal belongs to a class of animals that is naturally mischievous, i.e., naturally inclined to do an act that might endanger the safety of persons or property;[4] and (2) if so, is there a genuine issue of material fact as to whether, under the specific facts and circumstances of the present case, the minor plaintiff's injury was foreseeable?[5] With respect to the first question, we conclude that, as a matter of law, the owner or keeper of a domestic animal has a duty to take reasonable steps to prevent injuries that are foreseeable because the animal belongs to a class of animals that is naturally inclined to cause such injuries, regardless of whether the animal had previously caused an injury or was roaming at large and, accordingly, the owner may be held liable for negligence if he or she fails to take such reasonable steps and an injury results.[6] With respect to the second question, we conclude that the evidence submitted by the plaintiffs in the present case in opposition to the defendants' motion for summary judgment created a genuine issue of material fact as to whether the minor plaintiff's injury was foreseeable because horses have a natural propensity to bite. Accordingly, we conclude that the Appellate Court properly reversed the trial court's summary judgment rendered in favor of the defendants and remanded the case for further proceedings.

Before addressing the merits of the defendants' claims, it is important to clarify what this case is about. As we have indicated, the first question that we must decide is whether, as a matter of law, the keeper of a domestic animal that did not have known mischievous propensities, but that belongs to a class of animals with naturally mischievous propensities, may be held liable for foreseeable injuries caused by the animal when the keeper was *negligent* in controlling the animal or, instead, as claimed by the defendants, the keeper of such an animal is *immune* from liability for such injuries, even if he was negligent in controlling the animal, unless the animal was roaming at large. In other words, we must decide, as a matter of law, whether the owner or keeper of a domestic animal that has not previously displayed mischievous propensities has a duty to take reasonable steps to prevent injuries that are foreseeable because of the animal's naturally mischievous propensities. Because we conclude that the answer to the first question is "yes," the second question that this court must decide is whether there was a genuine issue of material fact as to whether, under all of the relevant facts and circumstances of this case, the injury caused by Scuppy was reasonably foreseeable.

Thus, contrary to the defendants' repeated suggestion in their briefs to this court and at oral argument, the Appellate Court did not adopt, and the plaintiffs are not asking this court to adopt, a rule under which the keeper of a horse can be held *strictly liable* for injuries caused by the animal.[7] Moreover, contrary to the defendants' suggestion, the Appellate Court did not hold, and the plaintiffs make no claim, that injuries from horse bites are foreseeable *as a matter of law* because all horses have a natural propensity to bite under all circumstances. In other words, neither the Appellate Court nor this court concludes that horses may be presumed to be dangerous. Rather, that issue must be decided on a case-by-case basis. Thus, because we conclude in the present case that the plaintiffs' evidence has created a genuine issue of material fact as to whether horses have a natural inclination to bite humans, the case must be submitted *to the trier of facts so that it may decide as a matter of fact* whether the plaintiffs have met their burden of proof on that issue and, if so, whether the defendants were negligent in controlling Scuppy. In other words, the *trier of facts* must determine whether the minor plaintiff's injuries were foreseeable and, if so, what the appropriate standard of care was, whether the defendants breached that standard of care and, if they did, whether the breach was a proximate cause of the minor plaintiff's injuries. Those questions are not for this court to decide.[8]

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "At all relevant times Astriab operated a business located at

203 Herbert Street in Milford (property) known as Glendale Farms. That business was open to the public and was twofold in nature. Glendale Farms sold annual flowers, vegetable plants, ground covers and seasonal ornamentals, and it also provided horse boarding services. The property contained, inter alia, greenhouses, stables and paddocks. As manager and supervisor, Astriab oversaw operations at Glendale Farms.

"Astriab testified in his deposition that customers of Glendale Farms enjoyed seeing the horses on the property and acknowledged that although he could have erected a barrier between the customers and the horses, he chose not to do so. Crystal Cobb, an employee at Glendale Farms and [the] girlfriend of Astriab, similarly testified in her deposition that customers regularly asked to look at the horses after purchasing goods from the greenhouse. She explained that it was something that customers expected because 'when they have little kids, they see the horse, they want to take a look.'

"The plaintiffs patronized Glendale Farms on the morning of May 18, 2006. At that time, the [minor] plaintiff . . . was two years old. After purchasing plants from the greenhouse, the . . . father placed the plants in their vehicle, which was located in a parking lot adjacent to a paddock containing three horses. The plaintiffs then walked over to the paddock and stood approximately one foot outside its fence to admire a brown horse known as Scuppy. The . . . father petted Scuppy as the [minor] plaintiff . . . watched. The . . . father stopped petting Scuppy when the [minor] plaintiff . . . noticed another horse in the paddock. Suddenly, and without warning, Scuppy lowered his head and bit the [minor] plaintiff . . . on his right cheek, removing a large portion of flesh. The injury ultimately required surgery and resulted in a permanent scar on the [minor plaintiff's] right cheek.

"The plaintiffs commenced the present action against the defendants on May 14, 2008.[9] Their complaint consisted of six counts. In counts one and three, the [minor] plaintiff . . . alleged negligence and recklessness on the part of Astriab. In count two, the . . . father alleged a claim of bystander emotional distress against Astriab. Counts four, five and six were directed at the Astriab Family Limited Partnership and repeated the respective allegations of the first three counts.

"On October 2, 2009, the defendants filed a motion for summary judgment. That one sentence motion alleged that 'there is no genuine issue as to any material fact and that the [d]efendants are entitled to judgment as a matter of law on the basis that they neither had actual notice nor constructive notice of any [mischievous] disposition or propensities on the part of the . . . horse which allegedly bit the minor [p]laintiff.' The defendants submitted the sworn affidavit of Astriab in support of that motion. In that affidavit, Astriab averred,

inter alia, that 'during the twenty-eight years that Glendale Farm[s] has kept horses, we have never had an episode where any of the horses we kept has bitten or otherwise injured any person.' He further maintained that '[b]ecause I do not know the identity of [the horse] which bit the [minor plaintiff], I have no way of knowing, and do not know, anything about the disposition or propensities of [the horse] before he bit the minor [plaintiff].'

"The plaintiffs filed an opposition to the motion for summary judgment in the spring of 2010, in which they argued that 'a horse, by its very nature, is capable of biting someone without provocation or predisposition and that this was known to the defendants.' The affidavit of Bradley W. Amery, a doctor of veterinary medicine, was filed in support thereof and contained a detailed explanation as to a horse's propensity to bite. In addition, the plaintiff submitted portions of the respective deposition testimony of (1) Astriab; (2) Cobb; (3) Milford [A]nimal [C]ontrol [O]fficer Richard George; and (4) Captain Bernard L. Begley, Jr., of the Milford [F]ire [D]epartment. In his deposition testimony, Begley testified that he had been riding horses 'all of [his] life.' He stated that, in his experience, a horse can bite at any time, explaining that '[horses] have been doing it . . . since the beginning of time, biting and kicking.' For that reason, Begley always is careful to feed a horse either with a bucket or 'palm up—I never put my fingers anywhere near the mouth of a horse.' Consistent with the explanation provided in Amery's affidavit, Begley opined that a horse's propensity to bite is part of its nature.

"In his deposition testimony, Astriab concurred with that assessment. He acknowledged that a horse, by its very nature, could harm a person who attempts to pet or feed [it], stating that 'a horse could bite you and cause great physical damage.' He further acknowledged that he understood that even though a horse does not display a propensity to bite another person, horses by their nature could bite a person. He testified, based on his experience, that he was 'well aware' that horses can bite people.

"Astriab also indicated in his deposition testimony that Scuppy was the horse involved in the incident with the plaintiffs. Although he testified that he had no knowledge of Scuppy biting a person prior to the May 18, 2006 incident, he repeatedly described Scuppy as a 'typical horse.' When asked if Scuppy was different from other horses that would bite if a finger was put in front of him, Astriab answered, '[n]o.' He acknowledged his concern that if someone made contact with Scuppy, whether to pet or feed him, he or she could get bit. When asked whether 'a person who doesn't know Scuppy . . . can go up to Scuppy, put [his] hand out and the horse, being a horse, could bite that person,'

Astriab answered, '[y]es.'

"In rendering summary judgment in favor of the defendants, the court concluded that 'the plaintiffs have failed to show, as they must, that the defendants were on notice that *Scuppy specifically, and not horses generally*, had a tendency to bite people or other horses. Therefore, the defendants owed no duty to the plaintiffs and are entitled to judgment on the plaintiff[s'] negligence claims as a matter of law.' " (Emphasis in original; footnotes altered.) *Vendrella* v. *Astriab Family Ltd. Partnership*, supra, 133 Conn. App. 632–37.

The plaintiffs appealed from the judgment of the trial court to the Appellate Court, which reversed the judgment in favor of the defendants. Id., 660. The Appellate Court concluded that the plaintiffs were not required to show that Scuppy had a known propensity to bite human beings to prevail on their negligence claim, but only that the injury was reasonably foreseeable because Scuppy belongs to a class of animals having naturally dangerous propensities. Id., 655–56. The Appellate Court further concluded that there was a genuine issue of material fact as to whether "horses as a class possess a natural propensity to bite" and, therefore, whether it was foreseeable that Scuppy would bite. Id., 659. This certified appeal followed. On appeal, the defendants contend that, contrary to the Appellate Court's conclusion, under the common law of this state, the keeper of a domestic animal that does not have a known mischievous propensity can be held liable for injuries caused by the animal under a negligence standard only if the animal was roaming at large. They further contend that, because there is no dispute in the present case that Scuppy was not roaming at large, and because there was no genuine issue of fact as to whether Scuppy had known mischievous propensities, the trial court properly rendered summary judgment in their favor, and the Appellate Court improperly reversed the judgment of the trial court. The plaintiffs respond that, to successfully oppose the defendants' motion for summary judgment, they were required only to show, and did show, that there is a genuine issue of material fact as to whether the minor plaintiff's injury was foreseeable because horses, as a species, have a natural propensity to bite. Accordingly, they urge us to affirm the judgment of the Appellate Court. We agree with the plaintiffs.

At the outset, we set forth the standard of review for the trial court's ruling on a motion for summary judgment. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our

review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 251–52, 819 A.2d 773 (2003). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Id., 252.

We next review the substantive law governing liability for injuries caused by domestic animals. In *Bischoff* v. *Cheney*, 89 Conn. 1, 92 A. 660 (1914), this court recognized that domestic animals fall into three general categories: (1) animals that "have either mischievous or vicious propensities which are known by [the owner]"; id., 4; (2) those that belong "to a species naturally inclined to do mischief or be vicious," but that have no known mischievous propensities; id.; and (3) those that neither have known mischievous propensities nor belong to a species with naturally mischievous propensities. Id., 5. This court acknowledged that many authorities have held that the owner of a domestic animal with known mischievous propensities "keeps it, as he would an animal ferae naturae, at his peril," and is strictly liable for any injuries caused by the animal; id., 4; while the owner of an animal belonging to a "species naturally inclined to do mischief or be vicious" can be held liable only if he fails to "use reasonable care to restrain the animal in such manner as to prevent its doing injury . . . ." Id.; compare 3 Restatement (Second), Torts § 509 (1977),[10] with 3 Restatement (Second), supra, § 518.[11] The court in *Bischoff* rejected this distinction, however, and concluded that, for both categories, "negligence is the foundation of an action" for injuries caused by a domestic animal.[12] *Bischoff* v. *Cheney*, supra, 4. Thus, there is no strict liability for injuries caused by domestic animals under the common law of this state, even if the animal had known mischievous propensities. With respect to animals that neither have known mischievous propensities nor belong to a species having naturally mischievous tendencies, the owner of such an animal cannot be held liable under any theory because "an owner cannot be compelled to anticipate and guard against the unknown and unusual." Id., 5.

Although the defendants in the present case acknowledge that the owner of an animal that has not previously exhibited mischievous propensities but that belongs to a class of animals having naturally mischievous tenden-

cies can be held liable under a negligence theory for damages caused by the animal, they contend that *Bischoff* and other decisions of this court have limited such liability to cases in which the animal was allowed to roam at large.[13] See id. (if domestic animal is "of a species having, or in fact of, a mischievous or vicious disposition, or its owner knows this propensity, and then permits the [animal] to go at large or trespass, he will be liable for the damage done by it resulting from the trespass"); see also *Hope* v. *Valente*, 86 Conn. 301, 304, 85 A. 541 (1912) ("[A] person may be negligent in the use of an instrument which in itself is entirely harmless. We have said in the case of a runaway horse that it was a question for the jury whether it was negligence to leave the horse unhitched in the street under circumstances disclosed by the evidence, regardless of its habit of running away."); *Haywood* v. *Hamm*, 77 Conn. 158, 160, 58 A. 695 (1904) ("The trial court properly instructed the jury that to justify a verdict for the plaintiff it was unnecessary for him to prove that the horse had a habit of running away, which was known to the defendant. It was enough if, whatever its disposition and habits, it had been left in the street unhitched under circumstances which, in the opinion of the jury, all things considered, made that a negligent act on the part of one whom the defendant had made his agent in the matter."); *Barnum* v. *Vandusen*, 16 Conn. 200, 204 (1844) (owner of trespassing sheep may be held liable for damages caused by sheep regardless of whether sheep had known mischievous propensities or were naturally mischievous).[14] A careful review of these cases, however, reveals that this court has never directly held that the owner of a domestic animal without known mischievous propensities, but belonging to a class of animals with naturally mischievous tendencies, may be held liable for negligence in handling the animal only if the animal was roaming at large.

In *Hope* v. *Valente*, supra, 86 Conn. 304, for example, the defendant argued that, "as the horse is a domestic animal not naturally vicious or inclined to mischief, an owner is not negligent in leaving it tied in the street, unless the individual horse so left is vicious, and the owner knows it." This court rejected the defendant's argument and concluded that, because it was foreseeable that the horse would kick if it was left tied to a wagon in the public street in the manner alleged, the owner could be held liable for his negligence even if the individual horse was not abnormally mischievous. Id., 304–305. The court did not hold, however, that an owner may be held liable *only* if the horse was in a public street or was trespassing.

Similarly, in *Bischoff* v. *Cheney*, supra, 89 Conn. 4, this court held that the owner of a domestic animal either with known dangerous propensities or belonging to a class with naturally mischievous tendencies can be held liable under a negligence standard for injuries

caused by the animal when it was roaming at large. Again, however, the court in *Bischoff* did not conclude that an owner of a domestic animal with dangerous propensities natural to its class may be held liable *only* if the animal was roaming at large, an issue that was not before it.[15] Indeed, this court's statement in *Bischoff* that, if a domestic animal "belongs to a species naturally inclined to do mischief . . . it is [the owner's] duty to use reasonable care to restrain the animal in such manner as to prevent its doing injury, and when he permits the animal to go at large or to trespass, he fails in his duty"; id.; reasonably could be interpreted to mean that allowing such an animal to go at large is merely *one type* of negligence for which the owner may be held liable.

We acknowledge that, in *Baldwin* v. *Ensign*, 49 Conn. 113, 117–18 (1881), this court stated that, if a domestic animal "is not accustomed to do mischief and is where he rightfully belongs and does an injury, there is no negligence and no liability. But if [the owner] allows [the animal] to trespass on others, or if he knowingly suffers [the animal] to be where he has no legal right to be, that is negligence; and if the natural and probable consequence is injury to others he is liable." This statement was dictum, however, and was not supported by any authority.[16] More importantly, the court in *Baldwin* recognized an exception to the principle embodied in this dictum that is so broad that it virtually swallows the rule. Specifically, the court stated in other dictum that "the owner of a horse which he knows to be vicious is liable for injuries inflicted by [the horse] while upon the owner's land which is open to the public. The owner is also liable, *though he does not know the horse to be vicious*, if he turns him loose to go *on such open land* [i.e., land belonging to the owner] in so negligent a manner as to endanger the safety of persons passing across it." (Emphasis added; internal quotation marks omitted.) Id., 119. This dictum directly supports the plaintiffs' position in the present case.[17]

Thus, contrary to the defendants' claim, none of this court's decisions has directly held that the owner or keeper of a domestic animal is categorically immune to liability for damages caused by the animal unless (1) the animal belonged to a species with naturally mischievous propensities and was roaming at large or (2) the animal had previously exhibited mischievous tendencies. We also recognize, however, that none of our cases has directly held that the owner or keeper of a domestic animal that has not previously exhibited dangerous propensities, but belongs to a class of animals that have naturally mischievous propensities, has a duty to prevent foreseeable injuries caused by the animal when the animal was on the owner's or keeper's premises, although some cases contain dicta to that effect. Accordingly, we address that question as a matter of first impression.

In making the determination as to whether, as a matter of public policy, the owner or keeper of a domestic animal that has not previously exhibited mischievous propensities may be held liable for injuries that were foreseeable because the animal belonged to a class of animals with naturally mischievous propensities, we consider the following four factors: "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." *Murillo* v. *Seymour Ambulance Assn., Inc.*, 264 Conn. 474, 480, 823 A.2d 1202 (2003). With respect to the first factor, we can perceive no reason why a reasonable person would not expect the owner or keeper of a domestic animal to take reasonable steps to prevent the animal from causing foreseeable injuries. It is the owners of such animals who have the "expertise and opportunity to foresee and control hazards, and to guard properly against [their own] negligence [and that] of their agents and employees. They alone [can] properly maintain and inspect their premises, and train their employees in risk management." (Internal quotation marks omitted.) *Reardon* v. *Windswept Farm, LLC*, 280 Conn. 153, 162, 905 A.2d 1156 (2006). In addition, the owners and keepers of domestic animals are "in a position continually to gather more information regarding any hidden dangers associated with [the animals], including the temperaments of the individual [animals]"; id.; as well as the natural propensities of the class of animals to which the individual animals belong. Accordingly, it would be "illogical to relieve [such owners and keepers], as the [persons] with greater expertise and information concerning the dangers associated with [the animals] from potential claims of negligence surrounding an alleged failure to [take reasonable steps to prevent foreseeable injuries]." Id.

Indeed, the legislature has provided that "[e]ach person engaged in recreational equestrian activities shall assume the risk and legal responsibility for any injury to his person or property arising out of the hazards inherent in equestrian sports, *unless the injury was proximately caused by the negligence of the person providing the horse or horses to the individual . . . .*" (Emphasis added.) General Statutes § 52-557p. Nothing in the language of this statute suggests that the legislature intended that the owner or keeper of a horse may be held liable for negligence in controlling the horse only if it previously had exhibited mischievous propensities or was roaming at large. Rather, it is reasonable to conclude that the legislature intended that the owner or keeper of a horse may be held liable for *all* forms of negligence, i.e., *any* failure to take reasonable steps to prevent a foreseeable harm, because of his or her familiarity with and knowledge of horses. Moreover, an

interpretation limiting liability to cases in which the horse was roaming at large would be unreasonably restrictive, inasmuch as "equestrian activities" frequently, if not usually, take place on the premises of the "person providing the horse . . . ."[18] General Statutes § 52-557p.

With respect to the second factor, "the public policy of encouraging participation in the activity, while weighing the safety of the participants"; *Murillo* v. *Seymour Ambulance Assn., Inc.*, supra, 264 Conn. 480; we recognize that the keeping of domestic animals benefits both those who own and keep the animals and those who do not. Domestic animals provide us with food, clothing, recreation and companionship. Accordingly, the keeping of domestic animals should be encouraged. We cannot conclude, however, that this policy outweighs the public policy in favor of ensuring that innocent parties are protected from and compensated for injuries caused by domestic animals. Rather, we conclude that these policies are in equipoise and, accordingly, this factor neither favors nor disfavors the recognition of a duty.

With respect to the third factor, "the avoidance of increased litigation"; id.; we conclude that holding the owners and keepers of domestic animals with only the mischievous propensities normal for their class potentially liable for foreseeable injuries caused by the animal while on the owner's or keeper's premises when the injury was the result of the owner's or keeper's negligence will not result in a flood of new claims. First, to prevail on such a claim, the plaintiff carries the burden of proving (1) that the type of injury was foreseeable under all the facts and circumstances of the case because the animal belonged to a class of animals having naturally mischievous propensities and, only if the plaintiff proves that the injury was foreseeable, (2) that the owner or keeper failed to take reasonable steps to prevent the injury. This burden is far from negligible. Moreover, even if the plaintiff is able to meet this burden, recovery still may be limited or barred by principles of comparative negligence[19] and premises liability.[20] Finally, as we have indicated, this is the first case in which this court has been required to determine whether the owner or keeper of a domestic animal can be held liable under these circumstances. It is reasonable to conclude that this issue would have arisen long before now if such injuries occur on a frequent basis, especially in light of this court's dicta in *Baldwin* v. *Ensign*, supra, 49 Conn. 119, suggesting that the owner of a domestic animal with no known mischievous propensities that is let loose on the owner's property can be held liable for injuries inflicted by the animal on persons who have permission to be on the property, and in *Bischoff* v. *Cheney*, supra, 89 Conn. 5, suggesting that the owner of a domestic animal belonging to a species with naturally mischievous propensities can be

held liable for injuries caused by the animal.[21] Accordingly, we conclude that this factor weighs in favor of recognizing a duty.

With respect to the fourth factor, "the decisions of other jurisdictions"; *Murillo* v. *Seymour Ambulance Assn., Inc.*, supra, 264 Conn. 80; a large majority of the jurisdictions that have considered the issue have adopted the approach urged by the plaintiffs in the present case and taken by § 518 of the Restatement (Second) of Torts; see footnote 11 of this opinion; without expressly limiting such liability to roaming animals.[22] Accordingly, this factor weighs strongly in favor of recognizing a duty.

We therefore conclude that "one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if . . . he is negligent in failing to prevent the harm"; 3 Restatement (Second), supra, § 518; regardless of whether the animal was roaming at large. To conclude otherwise would "undermine the policy considerations governing our tort system . . . [which include] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct . . . ." (Internal quotation marks omitted.) *Reardon* v. *Windswept Farm, LLC*, supra, 280 Conn. 159.

Of course, as is apparent from the foregoing analysis, for the owner of a domestic animal to be held liable for negligence when the animal has caused an injury, the injury must have been reasonably foreseeable. See *Allen* v. *Cox*, 285 Conn. 603, 610, 942 A.2d 296 (2008) ("[t]he ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised" [internal quotation marks omitted]). Accordingly, we turn to the defendants' claim in the present case that the evidence presented by the plaintiffs did not create a genuine issue of material fact as to whether the defendants reasonably could have foreseen the minor plaintiff's injury because horses as a species have a natural inclination to bite.[23]

The test for foreseeability is whether an "ordinary [person] in the defendant's position, knowing what he knew or should have known, [would] anticipate that harm of the general nature of that suffered was likely to result." (Internal quotation marks omitted.) Id. Whether an injury was foreseeable is to be determined by the jury when the evidence creates a genuine issue of material fact as to that issue.[24] See *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 613, 662 A.2d 753 (1995) (when evidence would support finding that injury was within foreseeable scope of risk, issue involved question of fact for jury, not question of law for court); *Gutierrez* v. *Thorne*, 13 Conn. App. 493, 501, 537 A.2d 527 (1988) (foreseeability "becomes a

conclusion of law only when the mind of a fair and reasonable man could reach only one conclusion; if there is room for a reasonable disagreement, the question is one to be determined by the trier as a matter of fact" [internal quotation marks omitted]).[25]

This court has recognized in another context that foreseeability "is a flexible concept . . . ." *Burns* v. *Board of Education*, 228 Conn. 640, 647, 638 A.2d 1 (1994). Consistent with this flexible approach, this court previously has recognized that, in making the determination as to whether an injury caused by a domestic animal was foreseeable, the jury may consider the animal's "previous behavior, the owner's knowledge of that behavior, the circumstances that gave rise to the harm, and the actual harm inflicted." *Allen* v. *Cox*, supra, 285 Conn. 615. We now conclude that, in addition to these factors, the jury may consider the natural propensities of the class of domestic animals to which the specific animal belongs. See 3 Restatement (Second), supra, § 518, comment (g), p. 31 ("In determining the care that the keeper of a not abnormally dangerous domestic animal is required to exercise to keep it under control, the characteristics that are normal to its class are decisive, and one who keeps the animal is required to know the characteristics. Thus the keeper of a bull or stallion is required to take greater precautions to confine it to the land on which it is kept and to keep it under effective control when it is taken from the land than would be required of the keeper of a cow or gelding."); id., comment (h), p. 32 ("Thus the keeper of even a gentle bull must take into account the tendencies of bulls as a class to attack moving objects and must exercise greater precautions to keep his bull under complete control if he drives it upon a public highway. So, too, the keeper of an ordinarily gentle bitch or cat is required to know that while caring for her puppies or kittens she is likely to attack other animals and human beings.").

Thus, to establish that an injury caused by a domestic animal was foreseeable, the plaintiff need not prove that the species as a whole has a natural tendency to inflict such harm, but only that the class of animals to which the specific animal belongs has such a tendency. See id., comment (g), p. 31; see also *Bischoff* v. *Cheney*, supra, 89 Conn. 5 (although cats generally are harmless, if particular cat belongs to class of cats having mischievous propensities, owner can be held liable for injuries inflicted by cat). Conversely, if a plaintiff presents evidence that an entire species has naturally mischievous propensities, the defendant may rebut this evidence by producing evidence that the mischievous propensities of the specific animal, or of the particular class of animals to which the specific animal belongs, are less severe than the mischievous propensities of the species as a whole.

We also recognize that "[t]he degree of foreseeability necessary to warrant [imposing liability] will . . . vary from case to case." *Gomez* v. *Ticor*, 145 Cal. App. 3d 622, 629, 193 Cal. Rptr. 600 (1983); see also *Burns* v. *Board of Education*, supra, 228 Conn. 647 ("evolving expectations of a maturing society [may] change the harm that may reasonably be considered foreseeable"). If the foreseeable harm was not severe and the harm could not be prevented except by extraordinarily burdensome means, the jury reasonably could find that the defendant should not be held liable unless the injury was highly foreseeable. *Gomez* v. *Ticor*, supra, 629 ("in cases where the burden of preventing future harm is great, a high degree of foreseeability may be required"). Conversely, when the foreseeable harm was severe and it could easily have been prevented by the defendant, a lesser degree of foreseeability may be sufficient to impose liability. Id.

With these principles in mind, we turn to the evidence presented by the plaintiffs in the present case. In their memorandum in support of their objection to the defendants' motion for summary judgment, the plaintiffs quoted from a deposition given by Astriab. Astriab testified that, when he saw families near the horses in the paddock at Glendale Farms, he would tell them to stay away from the horses because he did not want them to be bitten. He testified that a horse bite could "cause great physical damage," and admitted that horses with no known propensity to bite could bite "by their very nature . . . ." He also admitted that this was true of "the calmest horse on any given day . . . ." The plaintiffs also quoted from the deposition testimony of Fire Captain Begley, who stated that horses "have been doing it all since the beginning of time, biting and kicking." He explained that "it's like a kid, they want to feel everything with their mouth."

In addition, the plaintiffs quoted the deposition testimony of George, the animal control officer who had investigated the incident. George agreed that "a horse doesn't have to have a tendency to bite in order to bite." He testified that he had been "nipped" and that he had "got it in the belly one time." The horse that had bitten him in the belly "got a pretty good chunk of [him]." The bite broke the skin and left a bruise. That horse had not been known to bite.

In an affidavit attached to the plaintiffs' response to the defendants' reply to their objection, Amery, an equine veterinarian, stated that "[b]iting is a natural part of horses' lives and horses can bite for many reasons." Because of the anatomy of the horse's head, a horse cannot see what is directly in front of its nose and "is reliant on the sensory input from his mouth. While the nervous system is fast it is unable to process all that information before the bite has occurred." Amery also stated that "[b]iting is . . . a common form of mutual

grooming" by horses. When humans replicate this natural grooming behavior, a bite can result. Horses also "nip" to attract a person's attention, especially if they have been hand-fed treats. Other conduct, such as scratching the horse's muzzle or head, petting its neck or giving verbal rewards can also result in nipping behavior that can escalate to a full bite if the person is not paying complete attention to the horse.[26] Finally, Amery stated that most horse bites are not the result of an abnormally aggressive or nasty disposition, but occur when the horse is being groomed, is being "tacked up," is being hand-fed treats, or is in pain.

In their supplemental objection to the defendants' motion for summary judgment, the plaintiffs quoted from a second deposition by Astriab that had only recently been taken. Astriab testified in that deposition that he placed signs along his property to warn people not to touch or feed the horses. He was concerned that the horses would bite persons who tried to feed them. He also agreed that Scuppy was a "typical" horse that could bite when being hand-fed or petted, and that biting is a "typical reaction when something is put in front of a horse."

We conclude that this evidence, viewed in the light most favorable to the plaintiffs, as it must be, created a genuine issue of material fact as to whether horses have a natural propensity to bite that rendered the minor plaintiff's bite injury foreseeable. A jury reasonably could conclude from this evidence that, when a person stands directly in front of, hand-feeds or pets a horse, it is foreseeable that the horse will use its mouth and teeth to investigate the person or to attract the person's attention and, if the person is not paying full attention to the horse, this behavior can escalate to a bite. Indeed, Astriab conceded that a "typical" horse will have a tendency to bite something that is placed directly in front of it or when being hand-fed or petted.

In support of their claim to the contrary, the defendants contend that, to establish that it was foreseeable under the circumstances of the present case that Scuppy would bite, the plaintiffs were required to present evidence that it was reasonably probable, or more likely than not, that such an injury would occur, not that it was merely possible. In support of this contention, they rely on the principle that "[a] trier is not concerned with possibilities but with reasonable probabilities." (Internal quotation marks omitted.) *Aspiazu* v. *Orgera*, 205 Conn. 623, 630, 535 A.2d 338 (1987). This principle, however, applies to the causal connection between a defendant's conduct and a plaintiff's damages; id.; and requires the plaintiff to prove that it is more likely than not that the defendant's conduct *actually caused* the damages. This court has never held that, to be a foreseeable injury, the plaintiff must prove that an ordinary person would have believed before the

fact that it was more likely than not that the defendant's conduct *would cause* the plaintiff's injury. For example, to establish that it was foreseeable that a pedestrian would slip and fall on an icy sidewalk and break his wrist, a plaintiff need not prove that an ordinary person would believe it was more likely than not that such an injury would occur.[27] Rather, the test for foreseeability is "would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result . . . ." (Internal quotation marks omitted.) *Allen* v. *Cox*, supra, 285 Conn. 610. As used in this context, the phrase "likely to result" means that there was an unreasonable risk that the injury would result.[28] See *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 446, 815 A.2d 119 (2003) ("in order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress" [internal quotation marks omitted]); *Bigbee* v. *Pacific Telephone & Telegraph Co.*, 34 Cal. 3d 49, 57, 665 P.2d 947, 192 Cal. Rptr. 857 (1983) ("[o]ne may be held accountable for creating even the risk of a slight possibility of injury if a reasonably prudent [person] would not [act as the defendant did]" [internal quotation marks omitted]); *Sirmans* v. *Penn*, 588 A.2d 1103, 1108 (Del. 1991) (injury is foreseeable when defendant "should reasonably have anticipated that its conduct would create an unreasonably enhanced danger to one in the position of the injured plaintiff" [internal quotation marks omitted]); see also *Brown* v. *Edwards Transfer Co.*, 764 S.W.2d 220, 224 (Tex. 1988) ("[a]ll that is required is that the injury be of such a general character as might reasonably have been anticipated and that the injured party be so situated with relation to the wrongful act that injury might reasonably have been foreseen"). As we have explained, the determination as to whether a particular risk is unreasonable is to be left to the jury when reasonable minds could reach different conclusions.

In summary, we conclude that, as a matter of law, the owner or keeper of a domestic animal has a duty to take reasonable steps to prevent the animal from causing injuries that are foreseeable because the animal belongs to a class of animals that is naturally inclined to cause such injuries, regardless of whether the animal had previously caused an injury or was roaming at large. We also conclude that there is a genuine issue of material fact as to whether, under the specific facts and circumstances of the present case, it was foreseeable that Scuppy would bite the minor plaintiff causing his injury because horses, as a species, have a natural inclination to bite. Accordingly, we affirm the judgment of the Appellate Court reversing the trial court's summary judgment rendered in favor of the defendants and remanding the case to the trial court for further pro-

ceedings.

The judgment of the Appellate Court is affirmed.

In this opinion EVELEIGH, McDONALD and ESPINOSA, Js., concurred.

[1] Anthony John Vendrella, who is a minor, brought this action by and through his mother, Marylou Vendrella.

[2] The complaint also named "Timothy D. Astriab [doing business as] Glendale Farms" as a defendant. As noted by the Appellate Court; see *Vendrella* v. *Astriab Family Ltd. Partnership*, 133 Conn. App. 630, 631 n.2, 36 A.3d 707 (2012); "the use of a fictitious or assumed business name does not create a separate legal entity . . . [and] [t]he designation [doing business as] . . . is merely descriptive of the person or corporation who does business under some other name . . . . [I]t signifies that the individual is the owner and operator of the business whose trade name follows his, and makes him personally liable for the torts and contracts of the business . . . ." (Internal quotation marks omitted.) *Monti* v. *Wenkert*, 287 Conn. 101, 135, 947 A.2d 261 (2008).

[3] Thereafter, we granted permission to the Connecticut Farm Bureau Association and the Connecticut Horse Council, Inc., to file an amicus curiae brief in support of the defendants' position.

[4] As the Appellate Court observed in the present case, "a vicious or mischievous propensity in [domestic animals] is simply a propensity or tendency of an animal to do any act that might endanger the safety of the persons and property of others in a given situation; and any propensity on the part of a domestic animal, which is likely to cause injury to human beings under the circumstances in which the party controlling the animal places him, is a dangerous or vicious propensity." (Internal quotation marks omitted.) *Vendrella* v. *Astriab Family Ltd. Partnership*, supra, 133 Conn. App. 653.

[5] We granted certification to appeal on the following issue: "Did the Appellate Court properly conclude that a horse belongs to a species so naturally inclined to do mischief or be vicious to human beings that the minor plaintiff's injuries were reasonably foreseeable, regardless of whether the particular horse has shown a prior vicious disposition known to the keeper?" *Vendrella* v. *Astriab Family Ltd. Partnership*, supra, 304 Conn. 919. The plaintiffs now contend that the certified question mischaracterizes the basis for the Appellate Court's decision because that court did not conclude that horses, as a species, have a natural propensity to bite humans. Instead, they contend, the Appellate Court held that: (1) the defendants can be held liable for injuries resulting from their negligence in handling Scuppy even in the absence of proof that Scuppy had known mischievous propensities if the injuries were foreseeable because horses, as a species, have a natural propensity to bite; see *Vendrella* v. *Astriab Family Ltd. Partnership*, supra, 133 Conn. App. 655–56; and (2) there is a genuine issue of material fact as to whether Scuppy's behavior in biting the minor plaintiff was foreseeable under the specific facts and circumstances of this case. Id., 659. We agree with the plaintiffs and, accordingly, we reframe the certified question. See, e.g., *State* v. *Ouellette*, 295 Conn. 173, 184, 989 A.2d 1048 (2010) (court may reformulate certified question to conform to issue actually presented).

[6] This court has stated that "[d]uty is a legal conclusion about relationships between individuals . . . and imperative to a negligence cause of action." (Internal quotation marks omitted.) *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 615, 783 A.2d 462 (2001). This court also has recognized that the foreseeability of harm is a prerequisite for the existence of a duty. See *Perodeau* v. *Hartford*, 259 Conn. 729, 754, 792 A.2d 752 (2002) ("[a]lthough it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant" [citation omitted; internal quotation marks omitted]). Although the existence of a duty is ordinarily a question of law; *Gomes* v. *Commercial Union Ins. Co.*, supra, 614; as we discuss later in this opinion, when reasonable minds could differ as to whether a particular harm was foreseeable, the issue is one for the jury. See *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 613, 662 A.2d 753 (1995) (when evidence would support finding that injury was within foreseeable scope of risk, issue involved question of fact for jury, not question of law for court); *Gutierrez* v. *Thorne*, 13 Conn. App. 493, 501, 537 A.2d 527 (1988) (foreseeability "becomes a conclusion of law only when the mind of a fair and reasonable man could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be

determined by the trier as a matter of fact" [internal quotation marks omitted]). Thus, we hold as a matter of law only that, *if a plaintiff can prove that an injury by a domestic animal was foreseeable because the animal belonged to a class with naturally mischievous propensities*, the owner or keeper of the animal has a duty to take reasonable steps to prevent foreseeable harm. In any given case, the existence of this duty will depend on proof that the harm was foreseeable, which is a question of fact for the trier of facts.

[7] Strict liability means liability without proof that the defendant was negligent, i.e., that the defendant failed to take reasonable steps to prevent a foreseeable harm. *Caporale* v. *C. W. Blakeslee & Sons, Inc.*, 149 Conn. 79, 83, 175 A.2d 561 (1961) (defendant subject to strict liability can be held liable "even though he uses all proper care" [internal quotation marks omitted]). In the present case, the plaintiffs have assumed the burden of proving both that the minor plaintiff's injury was foreseeable and that the defendants failed to take reasonable steps to prevent it. Indeed, as we discuss later in this opinion, under the common law of this state, the owner of a domestic animal *cannot* be held strictly liable for injuries caused by the animal, even if the animal had known mischievous propensities. See *Bischoff* v. *Cheney*, 89 Conn. 1, 3–4, 92 A. 660 (1914). On the other hand, owners and keepers of dogs are held strictly liable for injuries caused by the dog pursuant to statute, with a few enumerated exceptions. See General Statutes § 22-357.

[8] We also are not called upon in this case to consider the scope and application of General Statutes § 52-557p, which provides that persons engaged in recreational equestrian activities assume the risk of the inherent hazards of such activities, because the defendants make no claim that the plaintiffs were engaged in recreational equestrian activities. See General Statutes § 52-557p ("[e]ach person engaged in recreational equestrian activities shall assume the risk and legal responsibility for any injury to his person or property arising out of the hazards inherent in equestrian sports, unless the injury was proximately caused by the negligence of the person providing the horse or horses to the individual engaged in recreational equestrian activities or the failure to guard or warn against a dangerous condition, use, structure or activity by the person providing the horse or horses or his agents or employees").

[9] "The complaint alleged that the defendants were 'the keeper, boarder and/or owner of [Scuppy, who] was being kept on or about the premises of Glendale Farms.' In his deposition testimony, Astriab indicated that, at the time of the incident, he was the keeper of Scuppy, who was owned by Laura Pendleton. Pendleton is not a party to this action." *Vendrella* v. *Astriab Family Ltd. Partnership*, supra, 133 Conn. App. 633.

[10] Section 509 of the Restatement (Second), supra, provides: "(1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.

"(2) This liability is limited to harm that results from the abnormally dangerous propensity of which the possessor knows or has reason to know."

[11] Section 518 of the Restatement (Second), supra, provides: "Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,

"(a) he intentionally causes the animal to do the harm, or

"(b) he is negligent in failing to prevent the harm."

[12] In support of this conclusion, the court in *Bischoff* cited *Baldwin* v. *Ensign*, 49 Conn. 113, 117 (1881), in which this court stated in dictum that "[i]t is the duty of a man who owns a vicious animal to give notice of his propensity or to restrain him; his omission to do so is negligence which makes him liable for the consequences." See *Bischoff* v. *Cheney*, supra, 89 Conn. 4. The court in *Baldwin* cited no authority for the proposition that the owner of an animal with known mischievous propensities can be held liable only if he was negligent in restraining the animal, however, and, as the court in *Bischoff* recognized; see id.; it appears to be inconsistent with *Woolf* v. *Chalker*, 31 Conn. 121, 130 (1862), in which this court recognized that, under the common law, the owner of a "ferocious" dog is strictly liable for injuries inflicted by it. See id. ("[t]he *keeping* of [a ferocious] dog is *wrongful* and *at the peril* of the owner, and therefore prima facie the owner is liable to any person injured by such a dog, without any averment or proof of negligence in securing or taking care of it, and irrespective of any question of negligence of the plaintiff" [emphasis in original]).

[13] The defendants in the present case do not dispute that the owner or

keeper of a domestic animal that previously has exhibited mischievous propensities can be held liable for injuries inflicted by the animal even if the animal was not roaming at large. See *Woolf* v. *Chalker*, 31 Conn. 121, 130 (1862) (owner of ferocious dog is strictly liable for injuries caused by dog while on owner's premises), overruled in part by *Bischoff* v. *Cheney*, supra, 89 Conn. 4 (owner of domestic animal with known mischievous propensities is not strictly liable for injuries caused by animal, but can be held liable for negligent restraint of animal).

[14] The court in *Barnum* held that the owner of a trespassing animal may be held *strictly* liable for damages caused by the animal. *Barnum* v. *Vandusen*, supra, 16 Conn. 205 (defendant could be held liable "upon proof of the facts . . . averred [by the plaintiff], without any proof of knowledge by the defendant, that the said sheep so in his custody, were diseased . . . and without any proof of malice, misconduct or neglect, on the part of the defendant" [internal quotation marks omitted]). This holding was effectively overruled by this court's decisions in *Baldwin* v. *Ensign*, 49 Conn. 113, 116–17 (1881) (owner is liable for negligence in allowing domestic animal to roam at large), and *Bischoff* v. *Cheney*, supra, 89 Conn. 4 (owner of domestic animal cannot be held strictly liable for damages caused by animal).

[15] For the same reasons, it does not logically follow from the Appellate Court's statement in *Stokes* v. *Lyddy*, 75 Conn. App. 252, 265–66, 815 A.2d 263 (2003), that "[i]t is the duty of the owner of [a vicious] animal, having knowledge of its vicious propensities, to give notice of the propensities or to restrain the animal, and that failure to do so is negligence that makes the owner liable for its consequences" that the owner has *no duty* to restrain an animal with no known mischievous propensities, but belonging to a class of animals with naturally mischievous propensities. The duty owed by the owner of such animals was not at issue in *Stokes*.

[16] Although the court in *Baldwin* relied generally on *Barnum* v. *Vandusen*, supra, 16 Conn. 204; see *Baldwin* v. *Ensign*, supra, 49 Conn. 116; the court in *Barnum* had stated only that, "the owner of a domestic animal, *not naturally inclined to commit mischief*, is not liable for an injury committed by it [in a place where it rightfully belongs] unless [the owner] has notice that such animal is accustomed to commit mischief . . . ." (Emphasis added.) *Barnum* v. *Vandusen*, supra, 204. Thus, the court in *Barnum* simply did not address the question of the owner's liability for injuries caused by an animal that is where it rightfully belongs and that belongs to a species that *is* "naturally inclined to commit mischief . . . ." Id.

Neither the defendant nor the court in *Barnum* cited any case of this court in support of the proposition that the owner of an animal that is where it is entitled to be cannot be held liable for injuries caused by the animal in the absence of scienter. Rather, the defendant cited a treatise and a New York case, both of which state categorically that the owner of a domestic animal is not liable for injuries caused by the animal unless the owner had knowledge of its previous mischievous behavior. See *Barnum* v. *Vandusen*, supra, 16 Conn. 202 (argument of defendant), citing 1 Z. Swift, Digest of the Laws of the State of Connecticut (1822), p. 551 ("if a man has a dog, or a bull, or any other domestic animal, such as are usually kept, and are necessary to the existence of man, no action is maintainable for any injury done by such animal, unless the owner knew that he was accustomed to do mischief: for without such knowledge, no negligence or fault is imputable to him"), and *Vrooman* v. *Lawyer*, 13 Johnson's Reports 339 (N.Y. Sup. 1815–1816) ("[i]f damage be done by any domestic animal, kept for use or convenience, the owner is not liable to an action on the ground of negligence, without proof that he knew that the animal was accustomed to do mischief"). Neither of these authorities cited a single Connecticut case to support this proposition, however, and we find their reasoning unpersuasive for the reasons set forth in this opinion. With respect to a third authority cited by the defendant in *Barnum*, namely, "1 Chitt. Plead. 69 (old [edition])"; *Barnum* v. *Vandusen*, supra, 202; it is unclear what edition of Chitty's treatise on pleading the defendant was relying on. The 1840 edition of the treatise, however, provides that "[t]he owner of domestic or other animals *not naturally inclined to commit mischief*, as dogs, horses, and oxen, is not liable for any injury committed by them to the person or personal property; unless it can be shown that [the owner] previously had notice of the animal's mischievous propensity . . . *or that the injury was attributable to some other neglect on his part* . . . ." (Emphasis added.) 1 J. Chitty & T. Chitty, A Treatise on the Parties to Actions, and on Pleading (8th American Ed. 1840), p. 81a. This language is very similar to the language used by the court in *Barnum*.

[17] We also recognize that the Appellate Court's decision in *Mann* v. *Regan*, 108 Conn. App. 566, 948 A.2d 1075 (2008), provides some indirect support for the defendants' claim that, if a domestic animal was not roaming at

large, the owner can be held liable for damages caused by the animal only if it had known mischievous propensities. In *Mann*, the plaintiff brought a negligence action against the owner of a dog that had bitten the plaintiff while she was caring for the dog in her own residence. Id., 569. The Appellate Court and the parties in *Mann* appear to have assumed that, to prevail on her claim, the plaintiff was required to "prove that the dog had vicious propensities and that the owner or keeper had knowledge, or the means of knowledge, of them"; (internal quotation marks omitted) id., 579–80; as that issue was not contested. This assumption apparently was based on a decision of the Connecticut Circuit Court. See id., quoting *Basney* v. *Klema*, 2 Conn. Cir. 538, 544, 203 A.2d 95 (1964). (The Connecticut Circuit Court acted as a trial court for certain cases from 1960 through 1974. See State of Connecticut Judicial Branch, "History of the Courts," available at http://jud.ct.gov/ystday/history.html [last visited March 24, 2014].) In turn, the court in *Basney* v. *Klema*, supra, 544, cited *Frederickson* v. *Kepner*, 82 Cal. App. 2d 905, 908, 187 P.2d 800 (1947), which held that the owner of a dog with known savage propensities "keeps the dog at his risk and is liable for damages resulting from the conduct of the animal." Although the court in *Frederickson* did not specify whether the owner would be strictly liable or liable for negligence, its use of the phrase "at his risk"; *Frederickson* v. *Kepner*, supra, 908; suggests the former, a distinction that was not recognized by the court in *Basney*. The failure to make the distinction between strict liability and liability for negligence also has caused confusion in other jurisdictions. In *Griner* v. *Smith*, 43 N.C. App. 400, 405, 259 S.E.2d 383 (1979), for example, the Court of Appeals of North Carolina observed that "[t]he notion that a party must show the dangerous propensity of a domestic animal before establishing a basis for recovery arose originally in what were essentially strict liability cases. See generally [W.] Prosser, Law of Torts, § 76 (4th Ed. 1971)." The court then observed that "often times decisions [of the North Carolina courts] are rendered without distinguishing between traditional negligence actions and actions which at common law might amount to actions involving strict liability." *Griner* v. *Smith*, supra, 406. The court stated that the cases involving strict liability for injuries caused by abnormally dangerous animals "should not . . . be read as restricting the rights of action against the keeper of a domestic animal when injury is caused by conduct other than [the abnormal] viciousness of an animal." Id., 407. Accordingly, the court in *Griner* concluded that "[t]he owner of a domestic animal is chargeable with knowledge of the general propensities of certain animals and he must exercise due care to prevent injury from reasonably anticipated conduct." Id.; see also *Drake* v. *Dean*, 15 Cal. App. 4th 915, 929, 19 Cal. Rptr. 2d 325 (1993) (observing that, in previous case before court involving dog bite, "legal principles governing strict liability and negligence were conflated"). For this and the other reasons stated in this opinion, *Basney* is hereby overruled.

The defendants in the present case also rely on D. Wright et al., Connecticut Law of Torts (3d Ed. 1991) § 125, pp. 359–60, which, in the section of the treatise dealing with strict liability, provides that, "[i]n the case of domestic animals . . . liability is predicated upon the knowledge (actual or constructive) by the owner or harborer of the animal that the animal has previously exhibited vicious tendencies. In other words, liability is based upon scienter, and ordinarily the owner or harborer of the domestic animal will not be liable until a second vicious act is committed by the animal. Thus the liability of the owner or a harborer of domestic animal is not a strict or absolute liability . . . ." We conclude that this reliance is misplaced for two reasons. First, contrary to the authors' suggestion, strict liability does not mean liability without proof of *scienter*; it means liability without proof of *negligence*. See *Caporale* v. *C. W. Blakeslee & Sons, Inc.*, 149 Conn. 79, 83, 175 A.2d 561 (1961) (defendant subject to strict liability can be held liable "even though he uses all proper care" [internal quotation marks omitted]). In other words, if proof of negligence is required, there is no strict liability, regardless of whether the animal previously has caused an injury. Thus, the reason that there is no strict liability for injuries caused by domestic animals in Connecticut is not because our common law requires proof of scienter— which we conclude it does not—but because this court in *Bischoff* v. *Cheney*, supra, 89 Conn. 4, held that it would be unduly harsh to hold owners liable for injuries caused by domestic animals without proof of negligence, even if the owner had knowledge of the animal's mischievous propensities. Second, to the extent that this treatise on Torts suggests that, under the common law of this state, there is no liability for *negligence* in the absence of scienter, we have determined that such a conclusion is not supported by this court's cases.

Because it is also likely to cause some confusion, it is appropriate to clarify this court's statement in *Granniss* v. *Weber*, 107 Conn. 622, 625, 141 A. 877 (1928), that the "principal purpose and effect of [a dog bite statute imposing strict liability on the owner of a dog that causes damage to the

body or property of any person] was to abrogate the common-law doctrine of scienter as applied to damage by dogs to persons and property, so that liability of the owner or keeper became no longer dependent upon his knowledge of the dog's ferocity or mischievous propensity . . . ." This language may be understood as implying that, before strict liability for dog bites was imposed by statute, the owner of a domestic animal was not subject to liability *of any kind* in the absence of scienter. It is more reasonable to conclude, however, that the dog bite statute eliminated the common-law requirement that the dog have a known vicious propensity to injure persons in order for the owner to be held *strictly liable*. See *Woolf* v. *Chalker*, 31 Conn. 121, 130 (1862) (under common law, owner of ferocious dog was strictly liable for injuries caused by dog), overruled by *Baldwin* v. *Ensign*, supra, 49 Conn. 117. There is no reason to believe that the statute was premised on the assumption that the owner of a dog that caused a foreseeable injury to a person could not be held liable for his or her *negligence* in the absence of proof of scienter.

[18] We recognize that § 52-557p provides that the owner or keeper of a horse is not liable for injuries "arising out of the hazards inherent in equestrian sports," and we express no opinion here as to whether, if a jury reasonably could conclude in a particular case that horses have a natural propensity to bite or to inflict other types of injuries, the risk of such an injury would be "inherent in equestrian sports . . . ." We hold only that the statute clearly contemplates that the mere fact a horse is on the premises of its owner or keeper will not immunize the owner or keeper from negligence claims involving foreseeable injuries caused by the horse. Nor does the statute provide that there is no liability for negligence if the specific horse has no known mischievous propensities.

[19] The defendants in the present case raised the affirmative defense that the plaintiffs' injuries were the result, in whole or in part, of the father's negligence. A number of courts have concluded that principles of comparative or contributory negligence apply to negligence cases involving injuries caused by domestic animals in the same manner as they apply to other negligence actions. See *Hardin* v. *Christy*, 462 N.E.2d 256, 258, 262–63 (Ind. 1984) (jury reasonably could have found that plaintiff who had been bitten by stallion was contributorily negligent when plaintiff was experienced horse trainer); *Baker* v. *McIntosh*, 132 S.W.3d 230, 233 (Ky. App. 2004) (owner not liable for injuries caused by colt when risk of injury was, or should have been, as apparent to injured person as to owner); *Huber* v. *Timmons*, 184 Neb. 718, 722–23, 171 N.W.2d 794 (1969) (plaintiff who was injured by pony was contributorily negligent when evidence showed that she was familiar with ponies and their natural propensities and was as aware of handler's ability to handle horses as defendants); see also 3 Restatement (Second), supra, § 518, comment (i), p. 32 ("[w]hen the liability stated in this [s]ection is based upon the negligence of the keeper of the animal, the person injured is barred by his contributory fault under the same conditions as in all other cases of negligence"). We note that, "[a]lthough Connecticut has adopted the doctrine of comparative negligence; see General Statutes § 52-572h (b); our statutes retain the term contributory negligence. See, e.g., General Statutes §§ 52-114 and 52-572h (b)." (Internal quotation marks omitted.) *Juchniewicz* v. *Bridgeport Hospital*, 281 Conn. 29, 32 n.4, 914 A.2d 511 (2007).

[20] The plaintiffs in the present case alleged in their complaint that the defendants "invited members of the general public to enter and patronize [Glendale Farms]." The defendants admitted this allegation except as to the words "to enter and patronize [Glendale Farms]," which they denied. "In general, there is an ascending degree of duty owed by the possessor of land to persons on the land based on their entrant status, i.e., trespasser, licensee or invitee." (Internal quotation marks omitted.) *Morin* v. *Bell Court Condominium Assn., Inc.*, 223 Conn. 323, 327, 612 A.2d 1197 (1992). A number of courts have concluded that the liability of an owner or keeper of a domestic animal to a person injured by the animal while on the owner's or keeper's premises depends on the injured person's entrant status. See *Duren* v. *Kunkel*, 814 S.W.2d 935, 938 (Mo. 1991); *DeRobertis* v. *Randazzo*, 94 N.J. 144, 157, 462 A.2d 1260 (1983); *Dunnings* v. *Castro*, 881 S.W.2d 559, 563 (Tex. App. 1994); but see *Mercer* v. *Fritts*, 9 Kan. App. 2d 232, 235–38, 676 P.2d 150 (1984) (when plaintiff was injured by domestic animal, law governing liability for injuries caused by animals applies regardless of plaintiff's entrant status), aff'd, 236 Kan. 73, 689 P.2d 774 (1984); cf. *Giacalone* v. *Housing Authority*, 306 Conn. 399, 408, 51 A.3d 352 (2012) ("Whether a dangerous condition is created by rats, snow, rotting wood or vicious dogs, these differing facts present no fundamental ground of distinction [for purposes of establishing liability for failure to keep the premises reasonably safe]. What defines the landlord's duty is the obligation to take reasonable measures to ensure that the *space* over which it exercises dominion is safe

from dangers, and a landlord may incur liability by failing to do so." [Emphasis in original.]).

[21] The amici argue that this issue has not arisen in the past because our case law has been clear that such claims are not allowed. As we have indicated herein, we disagree. Although there is dicta in some of our cases that arguably supports the defendants' position, and one Circuit Court case adopted that position based on a misreading of a California case; see footnote 17 of this opinion; this court has never directly addressed the issue.

[22] See *Humphries* v. *Rice*, 600 So. 2d 975, 978 (Ala. 1992) ("the owner of a *domestic* animal is assumed to know the animal's general propensities and, therefore, is under a duty to use due care to prevent injury from the animal's reasonably anticipated behavior"; [emphasis in original; internal quotation marks omitted]; even in absence of evidence that animal had mischievous propensities); *Vigue* v. *Noyes*, 113 Ariz. 237, 240, 550 P.2d 234 (1976) (applying rule set forth in § 518 of Restatement [Second], supra); *Van Houten* v. *Pritchard*, 315 Ark. 688, 692, 870 S.W.2d 377 (1994) (same); *Drake* v. *Dean*, 15 Cal. App. 4th 915, 929, 19 Cal. Rptr. 2d 325 (1993) ("As the Restatement [(Second), supra, § 518] and the cases indicate, negligence may be predicated on the characteristics of the animal which, although not abnormal to its class, create a foreseeable risk of harm. As to those characteristics, the owner has a duty to anticipate the harm and to exercise ordinary care to prevent the harm."); *Taft* v. *Taft*, 209 Ga. App. 499, 500, 433 S.E.2d 667 (1993) (bull is not abnormally vicious animal subject to 3 Restatement [Second], supra, § 509, imposing strict liability for injuries caused by abnormally dangerous domestic animals, but owner could be held liable under negligence theory for "the usual and natural consequence to be anticipated from allowing an ordinary animal of that kind to go at large" [internal quotation marks omitted]); *Farrior* v. *Payton*, 57 Haw. 620, 630, 562 P.2d 779 (1977) ("[t]he owner or keeper of a domestic animal is bound to take notice of the general propensities of the class to which it belongs . . . and insofar as such propensities are of a nature likely to cause injury he must exercise reasonable care to guard against them and to prevent injuries which are reasonably to be anticipated from them" [internal quotation marks omitted]); *Ross* v. *Lowe*, 619 N.E.2d 911, 914 (Ind. 1993) ("the owner of a dog is bound to know the natural propensities of dogs, and if these propensities are the kind which reasonably might be expected to cause injury, the owner must use reasonable care to prevent such injuries from occurring"); *Gardner* v. *Koenig*, 188 Kan. 135, 138, 360 P.2d 1107 (1961) (applying rule set forth in 3 Restatement [Second], supra, § 518); *Baker* v. *McIntosh*, 132 S.W.3d 230, 232 (Ky. App. 2004) (same); *Moura* v. *Randall*, 119 Md. App. 632, 646, 705 A.2d 334 ("[a]n animal owner may be liable under a negligence theory even where he is unaware of any mischievous propensity on the animal's part, if he has failed to exercise reasonable care in controlling the animal or preventing the harm caused by him"), cert. denied, 349 Md. 495, 709 A.2d 140 (1998); *Trager* v. *Thor*, 445 Mich. 95, 104–105, 516 N.W.2d 69 (1994) (applying rule set forth in 3 Restatement [Second], supra, § 518); *Duren* v. *Kunkel*, 814 S.W.2d 935, 938–39 (Mo. 1991) (same); *Huber* v. *Timmons*, 184 Neb. 718, 722,171 N.W.2d 794 (1969) ("Even in the absence of any known viciousness in a domestic animal, its owner is obliged to exercise over it a certain degree of care depending upon the kind and character of the particular animal concerned, the circumstances in which it is placed, and the purposes for which it is employed or kept. The owner . . . is charged with knowledge of the natural propensities of animals . . . and, if these propensities are of the kind that might cause injury he must exercise the care necessary to prevent such injuries as may be anticipated." [Internal quotation marks omitted.]); *DeRobertis* v. *Randazzo*, 94 N.J. 144, 156, 462 A.2d 1260 (1983) ("[i]f either the dog is not vicious or the owner does not know of its vicious propensities, then negligence, not absolute liability, applies"); *Smith* v. *Ruidoso*, 128 N.M. 470, 477, 994 P.2d 50 (1999) (adopting rule set forth in § 518 of Restatement [Second], supra, and concluding that "a negligence claim is appropriate where the dog owner lacks knowledge of the dog's vicious propensities and ineffectively controls the animal in a situation where it would reasonably be expected that injury could occur" [internal quotation marks omitted]); *Griner* v. *Smith*, 43 N.C. App. 400, 407, 259 S.E.2d 383 (1979) ("[t]he owner of a domestic animal is chargeable with knowledge of the general propensities of certain animals and he must exercise due care to prevent injury from reasonably anticipated conduct" even in absence of evidence that animal had known vicious propensities); *Westberry* v. *Blackwell*, 282 Or. 129, 133, 577 P.2d 75 (1978) (applying rule set forth in § 518 of Restatement [Second], supra); *Sybesma* v. *Sybesma*, 534 N.W.2d 355, 358 (S.D. 1995) (same); *Dunnings* v. *Castro*, 881 S.W.2d 559, 563 (Tex. App. 1994) (applying rule set forth in § 518 of Restatement [Second], supra, and concluding that "an owner of a dog may be liable for injuries caused by the dog even if the animal is not vicious, if the plaintiff can prove that the owner's negligent handling of the animal caused the animal to injure the plaintiff"); *Arnold* v. *Laird*, 94 Wn. 2d 867, 871, 621

P.2d 138 (1980) (applying rule set forth in § 518 of Restatement [Second], supra); *Jividen* v. *Law*, 194 W. Va. 705, 712, 461 S.E.2d 451 (1995) (West Virginia rule recognizing negligence action against owner of animal that does not have known, abnormally dangerous propensities "is similar, if not identical, to that utilized in [§ 518 of the Restatement [Second], [supra]"); *Nelson* v. *Hansen*, 10 Wis. 2d 107, 113–14, 102 N.W.2d 251 (1960) ("[a]t common law, an owner or keeper of a domestic animal which is not abnormally dangerous, and which he does not have reason to know to be abnormally dangerous, but which is likely to do harm unless controlled, is liable for the harm done by such an animal only if he fails to exercise reasonable care to confine or otherwise control it, or the harm is of a sort which it is normal for animals of that class to do"); *Borns ex rel. Gannon* v. *Voss*, 70 P.3d 262, 270 (Wy. 2003) ("if [the plaintiff] can prove that, under all the circumstances, the [dog owners] violated their duty to her of reasonable care in the control of [the dog], liability may result even if [the owners] had no knowledge of [the dog's] propensity to bite people, or indeed, even if [the dog] had no such propensity"); but see *Bard* v. *Jahnke*, 6 N.Y.3d 592, 599, 848 N.E.2d 463, 815 N.Y.S.2d (2006) (declining to recognize action for negligence arising from injuries caused by animal that belongs to breed that is naturally dangerous); *Searcy* v. *Brown*, 607 S.W.2d 937, 941 (Tex. Civ. App. 1980) ("[t]he owner of a domestic animal is not liable for injuries caused by it in a place where it has a right to be, unless the animal is of known vicious propensities or the owner should know of the vicious or unruly nature of the animal" [internal quotation marks omitted]); cf. *Groh* v. *Hasencamp*, 407 So. 2d 949, 952 (Fla. App. 1981) (holding that "[t]he owner or keeper of a domestic animal is bound to take notice of the general propensities of the class to which it belongs, and also of any particular propensities peculiar to the animal itself of which he has knowledge or is put on notice; and in so far as such propensities are of a nature likely to cause injury he must exercise reasonable care to guard against them and to prevent injuries which are reasonably to be anticipated from them"; [internal quotation marks omitted]; but stating that domestic animals are presumed not to be mischievous in absence of evidence of prior mischievous conduct), petition denied, 415 So. 2d 1360 (Fla. 1982); *Kinley* v. *Bierly*, 876 A.2d 419, 422 (Pa. Super. 2005) (applying 3 Restatement [Second], supra, § 518, but concluding that plaintiff was required to show that animal had known mischievous propensities to prevail on negligence claim).

The defendants in the present case rely on *Peterson* v. *Eichhorn*, 344 Mont. 540, 189 P.3d 615 (2008), and *Hojem* v. *Kelly*, 21 Wn. App. 200, 584 P.2d 451 (1978). In *Peterson*, the plaintiff brought an action for negligence after she was injured when a horse owned by the defendant Jim Eichhorn and kept on property owned by the defendant Bonnie Basta leaned over the fence of the corral in which Basta kept it and bit the plaintiff. *Peterson* v. *Eichhorn*, supra, 541–42. The plaintiff and Basta reached a settlement. Id., 542. With respect to the claims against Eichhorn, the court concluded that the plaintiff had "not established the existence of a genuine issue of material fact as to whether Eichhorn's keeping [the horse] in the corral on Basta's property as he did fell below the [proper] degree of care . . . ." Id., 550. It is entirely unclear, however, whether the court in *Peterson* concluded that the mere *fact* that Eichhorn was keeping his horse on Basta's property did not present a genuine issue of material fact as to whether Eichhorn had violated the standard of care or, instead, it concluded that there was no genuine issue of material fact as to whether the *manner* in which the horse was being kept violated the standard of care. Accordingly, the case provides little guidance.

In *Hojem* v. *Kelly*, supra, 21 Wn. App. 200, the plaintiff brought a negligence action against the proprietors of a riding stable that had rented her a horse. While the plaintiff was riding the horse on a field on the defendants' property, a riderless horse entered the field and frightened the plaintiff's horse, causing it to bolt. Id., 201–202. The plaintiff fell and was injured. Id., 202. The court in *Hojem* stated that the defendants could be held liable if the plaintiff proved that the riderless horse "was vicious or dangerous and that such was known or reasonably should have been known to the defendants." Id., 205. The court held that, because there was no evidence that a riderless horse in a riding area is dangerous and "a horse will not be presumed to be vicious or dangerous," the plaintiff could not prevail on her claim. Id. We find the defendants' reliance on this case to be misplaced for two reasons. First, the court in *Hojem* applied to a negligence claim the known, "abnormally dangerous propensity" standard that applies to claims of strict liability under § 509 of the Restatement (Second), supra. In a later case, the Supreme Court of Washington applied the standard set forth in § 518 of the Restatement (Second), supra, to negligence claims involving domestic animals. See *Arnold* v. *Laird*, 94 Wn. 2d 867, 871, 621 P.2d 138 (1980). Accordingly, *Hojem* has been implicitly overruled. Second, to the extent that the defendants in the present case rely on *Hojem* for the proposition that horses are presumed not to be dangerous, we do not conclude in the

present case that horses may be presumed to be dangerous. Rather, we conclude that, if a plaintiff presents evidence that it was reasonably foreseeable that a horse would be dangerous under the particular facts and circumstances of the case, and reasonable minds could differ on that question, the issue is one for the trier of facts.

[23] The plaintiffs contend that, because the defendants did not claim before the trial court that the plaintiffs' evidence did not create a genuine issue of material fact as to whether horses have a natural propensity to bite, but claimed only that, even if horses have such a propensity, they owed no duty to the plaintiffs, this issue was not preserved for review. Because both parties have briefed the issue, the issue presents a pure question of law, the issue would inevitably arise on remand if we declined to address it and the defendants cannot prevail on their claim, we conclude that we may and should address it regardless of whether it was preserved.

[24] In *Bischoff* v. *Cheney*, supra, 89 Conn. 5, this court effectively took judicial notice of the fact that cats as a species are harmless. See id. ("The cat is not of a species of domestic animals naturally inclined to mischief, such as, for example, cattle . . . . The cat's disposition is kindly and docile, and by nature it is one of the most tame and harmless of all domestic animals."). Under § 2-1 (c) of the Connecticut Code of Evidence, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) within the knowledge of people generally in the ordinary course of human experience, or (2) generally accepted as true and capable of ready and unquestionable demonstration." If the question of cats' naturally mischievous propensities had come before this court as a matter of first impression today, we might have applied the more flexible approach that we adopt in this opinion and have left that determination to the jury on a case-by-case basis. Indeed, it is far from clear to us that the proposition that cats are "kindly and docile, and by nature . . . one of the most tame and harmless of all domestic animals"; *Bischoff* v. *Cheney*, supra, 5; is "[a] judicially noticed fact . . . not subject to reasonable dispute . . . ." Conn. Code Evid. § 2-1 (c). The correctness of this particular ruling in *Bischoff*, however, is not before the court in the present case.

[25] See also *Dolezal* v. *Carbrey*, 161 Ariz. 365, 369, 778 P.2d 1261 (App. 1989) ("In the first instance, the determination of whether the defendant owed to [the] plaintiff any duty to use due care at all is always a question of law for the court. . . . This issue is to be presented to the jury, however, where there is a debatable question as to whether the injury to the plaintiff was within the foreseeable scope of the risk and whether the defendant was required to recognize the risk and take precautions against it." [Internal quotation marks omitted.]); *Bigbee* v. *Pacific Telephone & Telegraph Co.*, 34 Cal. 3d 49, 56, 665 P.2d 947, 192 Cal. Rptr. 857 (1983) ("Ordinarily, foreseeability is a question of fact for the jury. . . . It may be decided as a question of law only if, under the undisputed facts there is no room for a reasonable difference of opinion." [Citation omitted; internal quotation marks omitted.]).

The concurrence states that "[n]one of the cases cited by the majority suggests that the question of whether a domesticated animal has a natural propensity to engage in harmful conduct should be submitted to the jury." The concurrence then cites a number of cases for the proposition that the owner or keeper of a domestic animal is assumed to know the animal's general propensities, "thus indicating that the only question the jury must decide is whether the owner took appropriate steps to prevent the foreseeable harm." Contrary to the concurrence's statement, the court in *Dolezal* v. *Carbrey*, supra, 161 Ariz. 370, concluded that the questions of whether "an otherwise gentle horse might bolt in reaction to out-of-the-ordinary cues" and whether "an inexperienced rider on a runaway horse could be harmed in some manner" were questions for the jury because reasonable minds could reach different conclusions on those questions. The cases holding that the owner or keeper of a domestic animal is assumed to know the animal's propensities simply do not address the question of whether those propensities are a matter of common knowledge. Although the natural propensity of horses to bite may have been a matter of common knowledge in earlier times, when horses were a daily presence in most peoples' lives, we do not believe that that is the case today. See, e.g., *Leipske* v. *Guenther*, 7 Wis. 2d 86, 91, 95 N.W.2d 774 (1959) ("[i]n the present case there is no evidence that it is a natural propensity of horses to bite people, and we are not prepared to take judicial notice of such a propensity"). Moreover, although it may be undisputed in the present case that horses, as a species, have a natural tendency to bite, it is possible that, in another case, the horse at issue may belong to a class of horses for which the propensity is less

pronounced. We do not believe that it places an undue burden on plaintiffs to require proof of the natural propensities of the class of animals at issue in the particular case.

[26] We note that, although Amery indicated in his affidavit that a horse can bite when being groomed or petted, he did not equate petting a horse with grooming a horse. To the extent that the plaintiffs attempt to suggest that these forms of conduct are equivalent, that conclusion is not supported by the evidence.

[27] See *Bigbee* v. *Pacific Telephone & Telegraph Co.*, 34 Cal. 3d 49, 57, 665 P.2d 947, 192 Cal. Rptr. 857 (1983) ("foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct" [internal quotation marks omitted]); *Sirmans* v. *Penn*, 588 A.2d 1103, 1108 (Del. 1991) (trial court improperly instructed jury that, to be foreseeable, it must be "more likely than not" that injury would result from defendant's negligence); *Franklin* v. *Benock*, 722 N.E.2d 874, 879 (Ind. App. 2000) ("By logical deduction, the foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a lesser inquiry; if it was the same or a higher inquiry it would eviscerate the proximate cause element of negligence altogether. If one were required to meet the same or a higher burden of proving foreseeability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause.").

[28] To the extent that the defendants are disputing, not the meaning of the word "foreseeable," but the meaning of the word "propensity," we reach the same conclusion. As we have indicated, the touchstone of negligence is foreseeability. *Perodeau* v. *Hartford*, 259 Conn. 729, 754, 792 A.2d 752 (2002). Accordingly, if it is foreseeable that a class of domestic animals will cause a particular injury, the class of animals has a propensity to cause such injuries.